# RALPH W. EMERSON *versus* PLINY CUTLER *et al.*

Devise :—" I give and devise to my wife the use and improvement of one third part o' all my real and personal estate, during her natural life; and I give and devise the same at her decease to my children, their heirs and assigns." It was *held*, that this clause gave a contingent and joint interest in the personal estate, to those of the children who should be living at the death of the testator's widow.

Devise :—" I give and bequeath all the rest, residue and remainder of my estate, real and personal, to my son and my daughters, to be equally divided between them ; and to be distributed to them as they shall respectively arrive at the age of twenty one years and not before, to hold to them, their heirs and assigns forever ; subject to the payment of the annuities aforesaid ; and I do hereby authorize and empower my executors to receive the rents, income and interest of the residue of my estate, real and personal, hereby bequeathed to my children, and out of the same to pay the annuities aforesaid, and also appropriate and apply the whole of the remainder of said rents, income and interest, or such part as they shall judge necessary and proper, to the support and education of my children, until they respectively arrive at the age of twenty-one years." It was *held*, that the children took a vested estate in this residue immediately on the death of the testator, and that they took it as tenants in common and not as joint tenants.

*Held* also, that the income of the real estate and the income of the personal estate must contribute proportionably to the payment of the annuities.

Where real estate devised to a female infant was sold pursuant to a license of court, and she afterwards married and died under age, it was *held* that the proceeds of the real estate were personal estate, and consequently that her husband was entitled to the same.

So of damages paid for land of such infant taken for public use as a highway.

BILL in equity against Pliny Cutler, as sole surviving executor of the will of Beza Tucker and as late guardian of Ellen Tucker, one of the daughters, devisees and legatees of Beza

Tucker. The other devisees, legatees and persons interested, were made parties to the bill.

The bill states, that Beza Tucker, by his will dated March 6, 1820, and proved June 6, 1820, after devising and bequeathing divers tracts of land and divers annuities, bequeathed and devised as follows : —

" Item, I give and devise to my beloved wife Margaret, the use and improvement of one third part of all my real and personal estate, during her natural life ; and I give and devise the same at her decease to my children, hereinafter named, to hold the same to them, their heirs and assigns."

" Item, I give and bequeath all the rest, residue and remainder of my estate, real and personal, to my son George Washington, and my daughters Mary, Margaret, Paulina and Ellen, to be equally divided between them ; and to be distributed to them, as they shall respectively arrive at the age of twenty-one years, and not before ; so far as the same can be done, consistently with the lien hereinafter created ; to hold to them, their heirs and assigns forever ; subject to the payment of the legacies hereinbefore given. And I do hereby charge the rest, residue and remainder of my estate, real and personal, herein bequeathed to my children, with the payment of the annuities aforesaid. And I do hereby authorize and empower my executors to receive the rents, income and interest of the residue of my estate, real and personal, hereby bequeathed to my children, and out of the same to pay the annuities aforesaid, and also appropriate and apply the whole of the remainder of the said rents, income and interest, or such part as they shall judge necessary and proper, to the support and education of my children, until they respectively arrive at the age of twenty-one years ; and also to make insurance on my real estate against loss by fire, which is situated in Boston or Roxbury, if they think proper."

The bill further alleges, that the testator died in 1820, leaving a widow and the five children above named ; that Ellen was married to the plaintiff in 1829 ; that she died in February 1831, without issue, and not having arrived at the age of twenty-one ; that the plaintiff is her administrator ; that at her decease Cutler the executor had in his hands a large amount

of personal estate of the testator; that during the life of Ellen the executor did not expend the whole of the rents and income of her share of the residue of real and personal estate given to her in the will, and that a surplus thereof remains in his hands.

That George W. Tucker died before Ellen, after attaining the age of twenty-one, testate, but leaving his personal estate mostly undisposed of.

That Mary Tucker died before George and before Ellen, intestate, under the age of twenty-one, and never having been married.

And that before the marriage of Ellen, the defendant Cutler sold, by leave of court, certain real estate of the testator in Roxbury, and received the proceeds thereof; and that certain real estate of the testator, in Boston, was duly taken for public use as a highway, and that damages therefor were paid to Cutler.

The prayer of the bill is, that the plaintiff may be paid what he is now entitled to receive, and that his rights in the residue may be declared and established; and that the rents and profits of the real and personal estate since the decease of Ellen, may be first applied to the payment of the annuities, so long as they remain outstanding.

The defendant Cutler filed an answer, in which the facts above mentioned are admitted to be true.

The answer also states, that William R. P. Washburn was appointed administrator with the will annexed, of George W. Tucker; that for some time after the death of George W. Tucker the respondent continued to hold all the property as he had done before, it not having been divided; that in July, 1831, he was appointed guardian of the testator's daughters Margaret, Paulina and Ellen, and that in that capacity he has received of Washburn their several shares of the estate of George, so far as the same has been divided and distributed.

The respondent further says, that he was advised that, as Mary died under age and not having been married, her interest in the estate, real and personal, of her father, belonged to her brother and three surviving sisters, in equal shares, and that her mother had no share or interest therein; that no ad

ministrator has ever been appointed on the estate of Mary ; that the balance due to her on her private account was divided into four parts, which were carried to the credit respectively of her surviving brother and sisters ; and that William A. Kent and his wife Margaret, who was the testator's widow, have instructed the respondent to take no measures to procure the appointment of an administrator on the estate of Mary, or to open any of the accounts thereof heretofore settled, but that they, William A. Kent and his wife, waive their right, if any they have or ever had, to a share of the personal estate of Mary on the ground that her mother was one of her heirs at law.

The answer of Cutler was referred to and adopted in the answers of the other defendants. Margaret Kent, the widow of the testator, died in February, 1833.

The case came before the Court upon the bill and answers, with the will, accounts and documents annexed to the pleadings.

*Ashmun*, for the plaintiff, contended, 1. that under the residuary clause in the will, the children took several and vested interests in " the residue " of the testator's estate, real and personal, subject to the charges thereon, and that the plaintiff, as husband and administrator of Ellen, was entitled to her share, being one fifth, of the personal estate embraced in such residue. 1 Roper on Legacies, (1st Amer. edit.) 376, 387 : *Shattuck* v. *Stedman*, 2 Pick. 468.

2. That in the devise to the widow, of one third part of the real and personal estate, during her life, and after her decease to the children, it was the intention of the testator to dispose of the real and the personal estate in the same manner, and that the children took a vested interest, as tenants in common, and not as joint tenants, as well in the personal as in the real estate, and consequently, that the plaintiff was entitled to one fifth of this third part of the personal estate, subject to the widow's right to the income thereof during her life.

3. That Ellen, and consequently the plaintiff, was entitled to a distributive share of the personal estate of George and Mary

4. That the proceeds of the real estate sold by Cutler under license of court, and the damages received by him for the real

estate taken for public use as a highway, were personal estate at the time of Ellen's decease, and the plaintiff was entitled to her share of the same.

5. That the annuities should be paid out of the income of the real and of the personal estate, *pro ratâ*.

*Washburn*, for the defendants, argued that "the residue" was given to the executors, with instructions to apply the income to the support and education of the children during their minority, and that the share of any child was not to vest until such child should arrive at the age of twenty-one years. *Leake* v. *Robinson*, 2 Meriv. 384; *Pulsford* v. *Hunter*, 3 Bro. C. C. 419; Fearne, (7th edit.) 552, note; 2 Dane's Abr. 245; 1 Roper on Legacies, (1st Amer. edit.) 383; *Covenhoven* v. *Shuler*, 2 Paige, 122, 130.

That the personal estate given to the widow during her life would not vest in the children until her death, and that it would then vest in those only who should survive her; but that if it vested in the children immediately upon the death of the testator, they took as joint tenants and not as tenants in common. 4 Dane's Abr. 762; *Denny* v. *Allen*, 1 Pick. 147; *Shore* v. *Billingsly*, 1 Vern. 482; *Cray* v. *Willis*, 2 P. Wms. 528; *Webster* v. *Webster*, 2 P. Wms. 347, *Campbell* v. *Campbell*, 4 Bro. C. C. 15; *Westcott* v. *Cady*, 5 Johns. 348; *Hayden* v. *Stoughton*, 5 Pick. 528; *Brigham* v. *Shattuck*, 10 Pick. 306; 2 Williams on Exec. 770.

That the proceeds of the real estate sold and the damages paid for the real estate taken for a highway, were to be held by the executor in trust for the persons who would have taken the real estate itself, if it had not been thus disposed of. *Pierson* v. *Shore*, 1 Atk. 480; *Dagget, Petitioner, &c.*, 3 Pick. 280; *Moses* v. *Murgatroyd*, 1 Johns. Ch. R. 119; *Purdy* v. *Doyle*, 1 Paige, 558; *Champlin* v. *Baldwin*, 1 Paige, 562; *Hancock* v. *Minot*, 8 Pick. 29; *Kenny* v. *Udall*, 5 Johns. Ch. R. 464.

And that the annuities were not to be apportioned upon the rents and profits of the real and personal estate, the rents not being required for that purpose, but were to be paid out of the income of the personal estate alone. *Thompson* v. *Tappen*, 5 Johns Ch. R. 518; *Rogers* v. *Rogers*, 1 Paige,

188 ; *Lupton* v. *Lupton,* 2 Johns. Ch. R. 628 ; *Livingston* v. *Newkirk,* 3 Johns. Ch. R. 312 ; *Smith* v. *Kniskern,* 4 Johns. Ch. R. 9 ; *Seaver* v. *Lewis,* 14 Mass. R. 84 , 1 Roper on Leg. (1st Amer. edit.) 484.

Emerson
*v.*
Cutler.

June 27th

SHAW C. J. delivered the opinion of the Court. There is no doubt, that the plaintiff, either in his own right as husband, or as administrator of his deceased wife, is entitled to all the personal property which vested in his wife prior to or during the coverture, and that the defendant Cutler is bound to render an account of all such personal property remaining in his hands, at the time of the decease of the plaintiff's wife.

1. The first material question in the case, arises upon the construction of the residuary clause in the will of Beza Tucker. It was contended on the part of the respondents, that this clause gave a joint and contingent interest in the two thirds of the real and personal estate, subject to the charges upon them, to the son and four daughters of the testator, depending upon the event of their arriving at the age of twenty-one years, and that as Ellen did not attain that age, her share never vested. But the Court are of opinion, that by force of this provision, the son and four daughters took a vested estate in this residue, which took effect immediately upon the decease of the testator ; and that they took such estate as tenants in common, and not as joint tenants.

That it was a vested estate in the children appears manifest from several considerations. It was in terms given directly to them and their heirs, and not, either in terms or by implication, to the executors in trust, till they should respectively arrive at full age. The payment and distribution only of the estate, is suspended till the children respectively come of age. The executors are not made trustees of the legal interest, but directed as to the mode of managing, and the time of paying over and putting the children in possession, of the personal estate given to them respectively. The will authorizes and directs the executors to receive the rents, income and interest of the estate, real and personal, thereby bequeathed to the children, and after paying the annuities, to apply and appropriate the whole of the remainder, or such part as they might judge necessary, to the support and education of the children.

10 *

Upon the other point, the Court are of opinion, that without reference to the statute, providing what shall be deemed requisite to create a joint tenancy in lands, (*St.* 1785, *c.* 62, § 4,) the residuary clause in question gave to the five children an estate of one fifth each, in severalty, and not a joint estate. Whatever may have sometimes been held in regard to certain common law conveyances, it has ever been considered a settled rule in the construction of a will, that where a testator gives to two or more, property real or personal, " equally to be divided," or " share and share alike," or " in equal shares," or other equivalent expressions indicating an intent that the objects of his bounty, shall have their respective shares of the entire thing granted, this shall be deemed a tenancy in common, and not a joint tenancy, unless there be other express provisions, showing a clear intention on the part of the testator, that they shall take as joint tenants, or that the survivor shall take the whole. Bac. Abr. *Joint Tenants, F.*

In this residuary clause, there are several provisions, indicating in our judgment a clear intent of the testator, to give several estates and interests to his children, and nothing to counteract or control that construction. The words " equally to be divided between them " are decisive upon this point *Denn* v. *Gaskin,* Cowp. 660. And in the same case it was stated by Mr. Justice *Aston,* that these words had been held to constitute a tenancy in common, in a deed, and such, we have no doubt, is the law at the present day. But in this will, this construction is strengthened and put beyond doubt, by the succeeding clause, " to be *distributed* to them, as they shall *respectively* arrive at the age of twenty-one years." Both the words " distributed " and " respectively " look to division into parts, and to the exclusion of survivorship, and as the children could not arrive at the age of twenty-one, at the same time, the share of each was to be separated and severed from the whole at successive periods. The consequence is, that one fifth of the residue of the real and personal estate of her father vested in Ellen, notwithstanding she did not attain the age of twenty-one years, and that the plaintiff, as husband and as administrator of his deceased wife, is entitled

to one fifth of the personal estate and the produce and increase thereof, and to an account of the rents and profits of one fifth of the real estate, subject of course to the charge of the annuities and to all such payments, as the respondent Cutler has rightfully made on her account, in his capacity of executor or guardian.

2. The next question is, whether the plaintiff can claim any interest in the one third of the testator's property given to his wife Margaret for her life, and at her decease to the five children. It will be recollected that Margaret the mother survived her daughter and afterwards died. This question can only affect the personal property thus given. The mother being entitled to the real estate for her life, which continued till after the decease of Ellen, no claim would exist to the income of that real estate ; and as Ellen died without having had issue born alive, whether she took a vested interest in the remainder or not, the plaintiff could have no claim upon it. If it was a contingent remainder, it went to her surviving sisters by force of the will ; and if vested, it went to them as her heirs at law. Whether contingent or vested, therefore, is immaterial. The question then is, whether the plaintiff takes any interest in the personal property, thus given to the widow for life, and at her decease to the children ; and we think it clear that this personal property was a contingent and joint interest to those of the children, who should be living at the death of the mother, and that as Ellen deceased before her mother, she took no interest which the plaintiff can now claim. It was contingent till the death of the mother, and that contingency did not happen in the lifetime of the plaintiff's wife. Whether the real estate given by the same clause to the wife for life, with remainder to the children, constituted a vested or contingent remainder, we give no opinion, and for the reasons already stated, it is not necessary to give one.* But we think the rules applicable to the subject affecting real and personal estate, are somewhat different. The principle is stated by Mr. Chief Justice *Parsons*, in *Dingley*

---

* At March term 1835, in *Nash* v. *Cutler et al.*, it was held to be a vested remainder.

Emerson
v.
Cutler.

v. *Dingley*, 5 Mass. R. 537. After citing a similar clause in a will, and the argument drawn from it, he says : " This argument would have great weight in the devise of money or chattels for life, and a devise over to be equally divided among the sons on the death of the first devisee. For of a chattel there can be no remainder, which may vest and afterwards open, to let in after-born children ; and the interest in it must be contingent, until the time provided for the distribution of it, in order that they may take." But the Court are also of opinion, that this gift of personal property, to the children after the decease of their mother, was a joint gift, and that those only took, who survived the mother. The words indicating division and distribution, and making the property distributable at different times, are all wanting in this clause. It has been argued, that as by force of the statute already cited, the real estate devised by this clause of the will, must have been construed to create a tenancy in common and not a joint tenancy, and as it was the intention of the testator that the real and personal estate should go together, we ought to consider the gift of the personal property to be within the equity of the statute, and to hold it also as a gift in severalty, and not a joint gift. But we cannot yield to the force of this argument. By the common law rule of construction, this would be a joint gift. The legislature, by positive enactment, have interposed and declared that certain provisions in gifts, grants, feoffments and devises of *real estate,* shall have a different construction ; as this is in terms confined to real estate, it would be going beyond the just rule of construction to hold it applicable to gifts and bequests of personal property. On both grounds we are of opinion, that the plaintiff's deceased wife took no interest in this third of the personal estate given by her father's will. *Stuart v. Bruce,* 3 Ves. 632.

3. The next claim made by the plaintiff is for a share of the property of his wife, which came to her as heir of her sister, who died under age and unmarried and intestate. It appears by the facts, that whilst the property remained in the hands of the executor undivided, for the use and benefit of all the children, she thus died. It has before appeared, that the income of her share of her father's estate was to be applied

to her support and education ; it would follow as of course, that the surplus would be added to the principal, to accumulate and be paid over to her on her arrival at the age of twenty-one. It further appears, that by the consent and agreement of all parties interested, the defendant Cutler stated an account with the estate of Mary, which was satisfactory, and struck a balance, which was divided into four equal parts, one of which was carried to the credit of each of the surviving children, and of course to Ellen.

It is unnecessary in the present case, to consider the question, whether a distributive share of Mary's estate, would by force of the statute of distributions (*St.* 1805, *c.* 90, § 1,) go to her mother as of a child dying under age and unmarried, or whether that statute does, or not, apply to estate held by such child, by *will* and not by descent.* This question may perhaps become material hereafter between other parties. But it appears in the present case, that the mother, together with the defendant, William A. Kent, who had in the mean time intermarried with the mother, expressly assented to this arrangement and waived all claim to a distributive share of the personal property of her daughter, and the same parties have here by their answer waived all such claim, and offered to confirm the account thus stated by the executor, and waive all claim to open it. Regularly perhaps there should have been an administration on the estate of Mary ; but, as she probably owed no debts which have not been discharged by her guardian, as the father and mother have waived all claim to a distributive share, and all the parties interested have by their guardians consented to divide and distribute the estate of Mary without an administration in the same manner as it would have been distributable by law, under an administration, and agreeably to this arrangement Ellen was credited by Cutler as her guardian, with one fourth o' the net balance of the estate of Mary, this must be considered as a payment of money to her guardian on her account, which was a vested interest at the time of her decease, and which the plaintiff is entitled to recover.

---

* In *Nash* v. *Cutler et al.*, March term 1835, it was determined that h⁊ mother was entitled to a distributive share of Mary's estate.

Emerson<br>*v.*<br>Cutler.

4. The plaintiff also claims a share of the estate which came to the deceased wife, as one of the heirs of her brother George.   He died after arriving at full age, unmarried, having made a will, by which he disposed of a small part only of his personal estate.   The residue of his personal estate, by force of the statute of distributions, descends as intestate estate ; he died in the lifetime of his sister Ellen, and of course she had a vested interest in a distributive share of his personal property, subject to the payment of his debts, which the plaintiff is entitled to receive, in right of his deceased wife.   It may be questionable whether there should not be a final settlement of the account of the administration *cum testamento annexo* at the probate office, before this distributive share can be fully paid ; but so far as the defendant Cutler, in his capacity of guardian of Ellen, had received of the defendant Washburn, as such administrator, any sums of money on account of Ellen's distributive share of George's estate, the plaintiff is now entitled to an account of it.

5. The next question is, whether the plaintiff is entitled to claim a share of the proceeds of certain real estate, which was sold by the defendant Cutler, as her guardian, under a license of court ; and also a share of certain sums of money allowed and paid by the city of Boston as and for damages, upon taking for public use a certain part of the real estate which Beza Tucker devised to his children, including Ellen, the same being an estate situated in Merchant Row, so called, n Boston, and taken conformably to the provisions of law, to widen and improve a public highway in the city.   These two sums appear to us to stand upon the same footing, in regard to the present claim.   The money paid by the public, for a perpetual easement upon land, the effect of which is to deprive the owner of all beneficial use of the land, and money received upon the sale and alienation of the title, appear to us to stand upon the same principle, as it regards the present question, the proceeding by which the real estate is converted into personal being in both instances warranted by law.   And the Court are of opinion, that the plaintiff is entitled to the distributive share of his deceased wife in the proceeds of the estate sold by her guardian under a license of court, and also in the proceeds o

and taken for a public highway. They were both sums, which either as money actually paid, or as *choses in action*, vested in the wife, before or during the coverture, and therefore the plaintiff in his own right, or as administrator, is entitled to them. They were in the hands of Cutler as her guardian for her use and benefit.

In pursuing this inquiry, the true question is, what was the character of the property at the time of the decease of Mrs. Emerson, in order to determine whether it shall go to the heir at law, or the administrator. And we think that, at that time, it was personal property, subject to all the conditions and rules of law applicable to personal property. If these proceeds are not to be deemed the personal property of the ward as soon as received, when do they become so ? When the ward comes of age ? No rule of law so directs ; no principle which we can perceive requires it. Suppose the ward should die after twenty-one, but before the guardian has settled and paid over the proceeds, is there any reason for their going to the administrator in preference to the heir, which is not equally applicable when the ward dies before twenty-one ? How does it differ from a sale made under a license, by the guardian of an adult *non compos*? And would not the real estate in such case be effectually changed into personal, for all purposes of distribution ?

It appears to me that this result follows from the application of a few plain principles. The real estate of the minor is alienated by force of law, and the acts of the court and the guardian pursuant to law. The title of the ward is effectually divested. He acquired a sum of money as an equivalent, and the title to this money, which is personal property, is vested in him. On his death, the property to be distributed is personal, and the law governing the distribution of personal property must apply to it, without regard to the source whence it was derived. It seems no valid objection, to urge that if it had not been alienated it would have gone to the heir, as real estate. So where an adult owner of real estate alienates his estate by his own act, instead of the act of his guardian, and receives the money and dies. The money must be distributed as personal estate, and yet the same suggestion is

true, that but for such alienation, the heir, and not the administrator would have taken. And all derivative claims depending upon the legal distinction between real and personal estate, such as dower, curtesy and the like, will be governed by the same rule.

It is true that in many cases in equity, money shall be deemed land, and land money, for the purpose of fixing the beneficial interest. As where money is given to trustees to be laid out in land and settled on a person, and before the settlement such person dies, the heir who would have been entitled to the land, and not the administrator, shall have it. So where land is directed to be sold, and the proceeds given in a particular way ; though not sold, the person intended to be benefited by the proceeds shall be deemed the equitable owner of the land. All this goes upon the rule of equity, that what is directed to be done with property, by one having the power of disposal, shall be deemed to be in fact done, and that beneficial interests shall be regarded, and not be deemed to be defeated by a mere contingency. But these rules do not apply. In distributing real and personal estate respectively, the law does not look to the funds from which it was obtained, but to its character at the time when the right to distribution accrues. If at that time a sum of money stands in place of land, by an actual disposition to that effect, not yet executed, he who would be entitled to the land shall have the money ; and so conversely, where land is directed to be sold and converted into money, by a disposition not executed. These rules have no bearing on the present case, because here the whole power was actually executed, and the disposition entire and complete, in the one case, by the public in taking, and in the other by the guardian in selling the land, and in both the money was paid. It was paid to the guardian, merely because the minor had no legal capacity to receive the money and give a discharge, but it was the minor's interest and property, legally and beneficially, and the guardian was the mere agent, established by law, to act for her and supply the legal capacity.

But it is said, as already intimated, that this creates a difference in the mode of distribution. This is true. So if a

woman seised of real estate, arrives at twenty-one, sells her estate, places the proceeds in a fund for her separate use, for life, marries and dies; the money goes to her husband as personal property.   If she had retained the real estate, it would have gone to her heir.   Could the law look to the origin of this fund and distribute it as land, and divest the right of the husband ?   And yet what is the difference in such case between a woman above, and one under twenty-one, except the legal capacity to convey real estate ?   But if this want of legal capacity is supplied or superseded, in the one case, by the power of the public, and in the other, by the license granted to the guardian, and a legal sale and alienation is effected, the condition of the money received as the proceeds seems to be precisely the same as in the former case ; it is personal property definitively vested in the minor owner, and in case of her decease, to be distributed as her vested personal property.

6.  The last point discussed turns upon the question, whether the annuities are to be paid exclusively out of the income of the personal property, or equally contributed from the income of the personal and real estate.   The testator, in one clause, charges the " *residue* " of his estate real and personal, given to his children, with the payment of the annuities &c.   And in a subsequent clause he says, " I do authorize my executors to receive the rent, income and interest of the residue of my estate, real and personal, bequeathed to my children, and out of the same to pay the annuities &c."

It is manifest that it was the expectation and intent of the testator, that after the payment of his debts his personal property was to be invested in stocks or securities of some kind yielding income.   And we think it clear, that by force of this direction the annuities are to be paid out of the income of the eal and personal estate proportionably.

So far as regards the charge of these annuities by the executor heretofore, up to the period of Mrs. Emerson's decease, we cannot perceive any necessity for distinguishing between the real and personal estate, because the interests of all the children were alike in both.   But from and after her death, by which event the plaintiff came to have an interest in the

personal property, whilst the real estate descended to her heirs, the question becomes material. And we are of opinion, that these annuities are to be paid proportionably out of the income of the real estate and of the funded personal property yielding income. There is little analogy between this case, and that of the payment of debts and pecuniary legacies. The personal estate is the natural fund, out of which these are to be paid, unless a different direction is given. But the case of annuities charged upon real estate and funded personal estate, stands upon a different footing. It seems to have been the intent of the testator, after his debts were all paid, to put the residue of his estate in a condition to yield a regular income, that out of that income certain annuitants named should receive certain specified amounts during their respective lives, and the residue of course to go to those, to whom the capital itself was given. Now when by the occurrence of events, (whether foreseen or unforeseen by the testator is immaterial,) these funds, by the operation of law, go to different persons, being the direct objects of the testator's bounty, or those taking derivatively from them by operation of law, why should one fund be exclusively burdened, and the other wholly exonerated ? We can perceive no equitable reason why they should not contribute equally.

This being a charge upon the income, we are of opinion, that if the different funds yield income in different proportions, the relative value of the income, and not of the capital, will determine the rate of contribution. For instance, if the whole property liable to contribute consists of $ 50,000 in real estate, yielding income at the rate of five per cent., say $ 2,500, and 50,000 personal, at six per cent., say $ 3,000, making from both, $ 5,500, the result would be, that towards every $ 55 of annuity, the real estate should pay $ 25 and the personal 30 ; and after the same proportions, whatever may be the aggregate value and the annual income of the real and personal estate respectively.