### UNITED STATES v. BAKER et al.

(Circuit Court, N. D. New York. December 6, 1910.)

CONVERSION (§ 4*)—CONDEMNATION OF LANDS OF INFANT—LAW OF NEW YORK.
    In New York by operation of law there is an absolute out and out conversion of the real property of an infant, taken in condemnation proceedings to personal property, the conversion being absolute and perfect when the award is confirmed and the money deposited; and in the absence of a statute to the contrary the award is to be treated by the court as personal property, and paid over to the general guardian of the infant, notwithstanding the fact that Code Civ. Proc. N. Y. § 2345 et seq., provide in effect that the proceeds of an infant's lands, when sold by order of court, shall be treated as real estate, and paid over to a special guardian for investment, unless the general guardian shall give security therefor on improved and unincumbered real estate.

    [Ed. Note.—For other cases, see Conversion, Cent. Dig. § 2; Dec. Dig. § 4.*]

Proceedings by the United States against James B. Baker and others for condemnation of lands. On application for distribution of awards. Order of distribution.

George B. Curtiss and Thomas H. Dowd, for the United States.
George A. Lawyer, for incompetent defendants.
Samuel Child, for infant defendants.

RAY, District Judge. The United States, with leave of the state of New York, has condemned several thousand acres of land situated at Pine Plains, Jefferson county, N. Y., for military purposes, by appropriate proceedings in this action had under the provisions of the

Code of Civil Procedure of the state of New York. There are several infant defendants, and the commissioners appointed by the court have made their report, fixing the value of the interests of said infants in such real estate respectively. The report has been confirmed, and the sums due to the defendants, including such infants, have been deposited with the clerk of this court. It is the duty of the court to direct payment to such persons as may be entitled to receive the same. Some of the infants have general guardians, who have given bonds as such without reference to the compensation awarded in this action, and others of such infant defendants, so far as appears, have no general guardians.

Under the laws of the state of New York, when the interest of an infant in real estate is sold by order of the court, the proceeds of such sale cannot be paid to the general guardian of the infant, unless such guardian has first given security for the money on unincumbered real estate. The general guardian of an infant, who is to receive personal property and the rents and profits of real estate only, is only required to give a bond with two sufficient sureties, to be approved by the court appointing him. The question is presented whether the sums awarded as compensation for lands taken by the United States in this proceeding to the infant defendants are to be regarded as real estate, and treated as such, or as personal property. The provisions of the Code of Civil Procedure, providing for and regulating the condemnation of lands and the consequent exercise of the right of eminent domain, are silent on the subject.

Sections 2345–2348 of the Code of Civil Procedure of the state of New York provide for the sale or mortgage of the interest of an infant in real estate. These and the following sections in substance and effect expressly provide that the proceeds of such a sale remain and are to be treated as real estate. A special guardian is provided for, and section 2361 provides for the disposition and investment of the fund. Rule 59 of the Supreme Court provides that no part of such proceeds of such a sale shall be paid to a general guardian, unless he has given security on improved and unincumbered real estate. The interest and income, and in some cases the principal, arising from such a sale, may be used for the necessary support and maintenance of the infant and the payment of his or her debts. This shows a general legislative policy that the proceeds of the sale of the real estate of an infant, when made by order of the court, shall retain its character as real estate and be treated as such.

The question is presented whether an action or proceeding for the condemnation of lands and the fixing of the compensation to be paid are to be considered a sale by order of the court? The law provides for commissioners to fix the compensation to be paid, and further provides that when the report of the commissioners is confirmed, and the sums awarded the various owners are deposited in court, the title to the premises shall vest in the plaintiff—in this case in the United States. This mode of passing title to real estate is in the nature of a sale by order of the court, and guided by the legislative policy referred to one would be disposed to say that the compensation awarded to the owner ought to be treated as real estate. Otherwise the entire

real property of an infant by condemnation proceedings might be converted from real estate to personal property, and the devolution thereof in case of the death of such infant before arriving at the age of 21 years entirely changed, without his consent or participation. In New York the heirs at law are not in all cases the same as the next of kin entitled to take the personal property of the decedent.

It is, of course, true that money is personal property. When the Legislature authorizes the condemnation of real property and the award of the money compensation to the infant owners, and the money compensation is deposited in court, the Legislature necessarily changes the nature and character of the property belonging to the infant. It is no longer real estate in fact, but personal property. In the absence of any declaration on the subject, impressing the compensation awarded and paid into court with the character of realty, or providing it shall retain that character, such proceeds or compensation become personal property by force of the proceedings. It cannot be questioned that it is competent for the Legislature to make this change, or provide a procedure by which the change is effected; and in the absence of a declaration to the contrary it would seem that the real estate by such proceedings is converted out and out into personal property. But for the legislative policy above referred to, this would seem to be the outcome. I am inclined to the opinion that the law of the state of New York should govern in determining this question, and should control the court in directing the payment of these funds to the guardians of the respective infant defendants.

In Ballou v. Ballou, 78 N. Y. 325, land was appropriated and taken possession of by the state of New York. After such appropriation, but before the damages were appraised and fixed, the owner, William P. Ballou, died intestate, leaving one son and a widow. The Court of Appeals held that the title to the fee and the claim for the damages for the taking descended to the son. After the death of William P. Ballou, and after the state had taken possession as stated, a claim for the damages was made in the names of the son and the widow of the intestate, and an award of damages made and recorded in their names. Subsequently the son died intestate, and his mother was appointed administratrix of his estate, and she sued to recover as such administratrix the damages awarded to the son. The court said:

"It [referring to the award] was at the time of his death [that of the son] a personal asset, and went to the plaintiff as representative."

No authority was cited.

In King, Executor, et al. v. Mayor, etc., 102 N. Y. 171, 6 N. E. 395, it was held:

"Where, under a statute closing a highway, damages were directed to be awarded and paid to the owners of premises injured by the closing, held, that the right to damages was personal, and belonged to an owner at the time of the closing, although before the award he had conveyed his title."

In Utter v. Richmond et al., 112 N. Y. 610, 20 N. E. 554, damages were awarded for injury to a lot fronting on the Bloomingdale road, caused by the closing of such road. At the time of the closing the lot was owned by one U., subject to the lien of a purchase-money mort-

gage. U. thereafter conveyed the lot to one W., who assumed the payment of the mortgage. The mortgage was foreclosed and the premises sold, leaving a deficiency of $1,300. To avoid the entry of a personal judgment, U. paid the mortgagee $200 to be released. The damages awarded were applied to extinguish the deficiency so far as unpaid, and this was held proper; that the lien of the mortgage extended to and embraced so much of the award as was needed to pay the deficiency. It was also held that, when land is taken for public use, the damages awarded take the place of the land "in respect to all the rights and interests dependent upon and incident to it." If this means that the award takes the place of the land so far as the rights of the heirs at law and next of kin of the owner are concerned, then the award should be treated as real estate until the owner has capacity to elect to take it as personal property. As an infant has no power to elect, it should be deemed real estate and held as such until the infant attains his majority.

In Durando v. Durando, 23 N. Y. 331, Paul Durando devised his real property to his widow for life, remainder to his children, of whom Peter Durando was one. During the lifetime of Paul Durando's widow, and while she was entitled to her life estate in the realty, a portion of it was appropriated to a public purpose, and the compensation awarded was by order of the court and subject to its order deposited, the interest to be paid to such widow during her life. Peter Durando died before the death of the widow of Paul Durando, leaving a widow. On the death of Paul Durando's widow, the widow of Peter Durando claimed that she was entitled to either dower in her husband's share, if held to be real estate, or to that share as personal property, if held to be personal. It is perfectly clear that on the death of the widow of Paul Durando the heirs of Peter took his share if it was real estate, or that his widow or next of kin took his share in the award if it was personal property. The question was squarely whether that award of damages for the taking of the property was real estate or personal property. The court held that the widow of Peter was not entitled to dower, for the reason that her husband was never seised in fact or law during the coverture. This, of course, was correct. The Court of Appeals further held:

"There can be no pretense that the widow is entitled to the funds in question as personal estate, under the statute of distributions. The money is the product of the land taken, and must belong to the person entitled to the land which it represents and out of which it arose."

I do not see that this case can be reconciled with Ballou v. Ballou.

In Matter of Seventh Ave., 59 App. Div. 175, 69 N. Y. Supp. 63, the Appellate Division held as to the award for land in condemnation proceedings that:

"An award is not land, and is only treated as land in equity when necessary to adjust the rights of the parties. An award is a claim or right personal to the owner of the land. It is personal property, that passes at death to the personal representative, and not to the heir."

The opinion of the court then cites King v. Mayor, 102 N. Y. 171, 6 N. E. 395, and quotes from the opinion of Judge Finch in that case.

If an award in condemnation proceedings is personal property, and passes to the personal representative, and not to the heir, then it is entirely immaterial whether the person entitled to the award, and to whom it is made by the commissioners, is an adult or an infant.

Matter of City of Rochester, 136 N. Y. 83, 32 N. E. 702, 19 L. R. A. 161, is also referred to; but I think this case is in accord with others which hold that, when land is condemned and an award made, the lien of a mortgage on the land attaches to and follows the award. I do not see how this can be doubted.

In Van Loan v. City of New York, 105 App. Div. 572, 576, 94 N. Y. Supp. 221, it was again held that an award of compensation made for lands taken in the exercise of eminent domain is personal property, and that if the right to the compensation accrues to a decedent in his lifetime it passes to his administrators or executors. Here the right to this award has accrued to these infants in their lifetime.

In Fawcett, as Receiver, v. City of New York, 112 App. Div. 155, 159, 98 N. Y. Supp. 286, it was again held that a receiver appointed before an award is made for lands taken by eminent domain is entitled to an award made thereafter, as the judgment debtor ceases to have any interest in the lands taken, and also that such an award is personal property.

In Harris v. Kingston Realty Co., 116 App. Div. 704, 101 N. Y. Supp. 1104, it was again held that an award to be paid for lands taken in condemnation proceedings is personal property.

On the other hand, in 9 Cyc. 849, it is said:

"Exercise of Right of Eminent Domain.—The better doctrine seems to be that where there is a compulsory conversion of real estate—that is, against the will or consent of the owner, such as the exercise of the right of eminent domain—the fund will be treated as real estate until the owner, being sui juris or of disposable capacity, manifests a willingness to accept it as personalty."

The cases cited fall short of sustaining the quotation, so far as New York is concerned.

In 7 American and English Encyclopedia of Law (2d Ed.) 495, it is stated:

"By Statutory Authority—Eminent Domain.—Where the land of persons sui juris is taken under the power of eminent domain, the proceeds, of course, become personalty. Where, however, the land is held in trust, or is held by an infant or a lunatic, the proceeds will be regarded as continuing their character as realty."

No New York authority is cited.

In Durando v. Durando, 23 N. Y. 331, no question of infancy was involved. The court held that an award of damages for land taken was realty, as already seen. But in Ametrano v. Downs, 170 N. Y. 388, 63 N. E. 340, 58 L. R. A. 719, 88 Am. St. Rep. 671, it is held that, where real estate is transferred under condemnation proceedings, its proceeds or damages awarded become personal estate as if the disposition had been voluntary.

In Simonds v. Simonds, 112 Mass. 157, the question was whether damages awarded for taking real estate devised in trust for George W. Simonds, and on the termination of the trust over to others, was real or personal estate. The court said:

"We are of opinion that the sum awarded by the city of Boston as damages for a portion of the Warren Street estate, taken for public use, must be regarded as real estate for the purposes of the trust. The legal title to the land taken was in the trustees; the taking it by the city cannot change the rights of the parties. It is merely a change of the trust securities, and the sum awarded in damages is to be treated as the real estate would be in the place of which it stands. The claim, therefore, that it passed to the administratrix of George, cannot be sustained."

The forced disposition of real estate held as a trust fund, and directed to be held as real estate, and the payment of money for the taking, is not in equity a conversion to personal property. The character of the trust property and its devolution cannot be changed in that way. In this all the cases agree. And it is immaterial whether the beneficiaries of the trust and those ultimately entitled to the trust property are adults or infants, persons of sound mind or non compos mentis.

In Gibson v. Cooke, 42 Mass. (1 Metc.) 75, real estate was devised in trust, the rents, etc., to be paid to the cestui que trust, and a part of such real estate was taken for a railroad, and the damages paid to the trustee. Held (Shaw, C. J.):

"The money received as damages is to be regarded as capital substituted, by act of law, in the place of the land taken; and the income thereof is to be distributed as the income of the land would have been, if no easement had been created therein."

The same doctrine is clearly and specifically declared in Holland v. Cruft, 69 Mass. (3 Gray) 162, 179, 180, 181, where the court (Shaw, C. J.) said (page 180):

"So where land held in trust is taken for public use under the right of eminent domain, the money paid for it stands in its place, subject to the same trust and to the same ultimate disposition."

In these cases there was a trust, and the holding was that in equity the exercise of the right of eminent domain did not impair the trust estate or change the character of the estate held under it.

In Emerson v. Cutler, 31 Mass. (14 Pick.) 108, 118–121, the court, per Shaw, C. J., held that, where land was devised to a female infant, and a part sold pursuant to license of the court, and a part taken in condemnation proceedings for use as a public highway, the proceeds of both the sale and condemnation were personal estate, and passed as such on the death of the infant owner before arriving at the age of 21 years. The court said (page 119):

"It appears to me that this result follows from the application of a few plain principles. The real estate of the minor is alienated by force of law, and the acts of the court and the guardian pursuant to law. The title of the ward is effectually divested. He acquired a sum of money as an equivalent, and the title to this money, which is personal property, is vested in him. On his death, the property to be distributed is personal, and the law governing the distribution of personal property must apply to it, without regard to the source whence it was derived. It seems no valid objection to urge that, if it had not been alienated, it would have gone to the heir as real estate. So where an adult owner of real estate alienates his estate by his own act, instead of the act of his guardian, and receives the money and dies, the money must be distributed as personal estate, and yet the same suggestion is true— that but for such alienation the heir, and not the administrator, would have taken. And all derivative claims depending upon the legal distinction between real and personal estate, such as dower, curtesy, and the like, will be governed by the same rule."

This covers the case now before this court, and is in accord with the great weight of authority in New York. The same, in the case of condemnation of an infant's lands, was held in Pennsylvania. Hough's Estate, 3 Pa. Dist. 187. The same in Stark's Estate, 9 Kulp (Pa.) 120. See, also, Cadman v. Cadman, L. R. 13 Eg. 470, 41 L. J. Ch. 468, 20 Wkly. Rep. 356. However, in Kelland v. Fulford, 6 Ch. Div. 491, 25 Wkly. Rep. 506, money paid into court for land of which an infant was absolutely seised, and which land was taken under the provisions of section 69, Lands Clauses Consolidation Act of 1845, was held to remain impressed with the character of real estate, and, on the death of the infant, to pass to his heir at law. I think this decision resulted from the terms of the act. The same in effect was held in the case of a lunatic (Dixie v. Wright, 32 Bear. 662), and in the case of a felon, when otherwise the money would have escheated to the crown (Re Harrop, 3 Drew, 726, 3 Jur. U. S. 380, 26 L. J. Ch. 516, 5 Wkly. Rep. 446).

In New Jersey (Wetherill et'al. v. Hough, 52 N. J. Eq. 683, 29 Atl. 592) it was held that:

"Where there is a compulsory conversion of real estate, as in the exercise of the right or power of eminent domain, without the consent or against the will of the owner of the fee, being sui juris or of disposable capacity, he must either recognize it or manifest a willingness to accept it as personalty to effect a conversion."

The same court in the same case also held that where adults sold the interest of an infant in real estate, and his share in the proceeds of sale was paid to his guardian, such money became personal estate as to such adults; they being tenants in common with the infant. I am unable to comprehend how the forced and unlawful sale of an infant's real estate by the other tenants in common of the same property converts the proceeds of the infant's share into personal property. The persons making the sale could not thereafter as heirs of the infant claim the land of the purchaser; but it seems to me that the proceeds of such unlawful and involuntary sale would remain real estate and descend as such.

In Graham v. Dickinson, 3 Barb. Ch. (N. Y.) 169, 184, it was held that:

"Where the real estate of a married woman (who at that time could not sell her real estate without the assent and concurrence of her husband) has been converted into personalty by operation of law during her lifetime, it will be disposed of by the court after her death in the same manner as if she had herself converted it into personal property previous to her death."

The chancellor said:

"It is true, if the real estate of the devisee had not been sold under the order of the surrogate, and she had continued to own it until the time of her death, it would have descended to her heirs at law, and her husband would have been excluded. But there is no legal presumption that a feme covert who is the owner of real estate will not join with her husband in selling it, for the purpose of converting it into personalty. And the real estate in this case having been converted into personalty, by operation of law, during her lifetime, it must now be disposed of in the same manner as if she had herself converted it into personal property."

If this be good law, Why are not the proceeds of real estate of an infant, such real estate having been converted into money "by opera-

tion of law," as by condemnation proceedings, to be treated and disposed of personal?

Under all the cases, nearly, the condemnation of the land of a person of full age and sound mind and the payment into court of damages as compensation for the taking converts the proceeds of the land taken into personal property out and out. This is so, irrespective of any consent or election on the part of the owner. If the condemnation and payment of damages for the taking converts the damages into personal property in the case of an adult, why not in the case of an infant? The conversion does not depend upon assent or election. The law effects the conversion, irrespective of assent or election in the case of an adult; then why not in the case of an infant, there being no statutory provision on the subject? And, if so converted by operation of law, the conversion is perfect when the damages awarded are deposited in court subject to the order of the owner of the interest condemned, whether he be an infant or an adult. All real property is held by the owner subject to the exercise of the right of eminent domain, and it is immaterial whether the land is owned by an adult or an infant, an alien or a citizen, a person of sound or unsound mind. If the legal effect of the exercise of this right and the payment of just compensation is to convert that compensation into personal property, then it becomes a matter of legislative enactment as to when and on what conditions the money shall be paid to the guardian of an infant owner.

The Legislature of the state may enact a law that such damages awarded to an infant shall be held and invested in the same manner as the proceeds of real estate sold during the minority of the infant are held and invested, and require that the general guardian receiving such proceeds shall give any kind of security as a condition of receiving it. Guardians are appointed pursuant to laws made by the Legislature, and are only entitled to receive the property of the ward on complying with the conditions imposed by the law creating them. But in New York we have no statute requiring the general guardian of an infant to give security on improved unincumbered real estate as a condition of receiving the award of damages made in proceedings condemning the real estate of such infant for a public use. As in this case the award and its confirmation and the deposit of such award in court vests the title to the real estate in the United States, and converts the award made into personal property out and out, in the absence of legislative enactment to the contrary, such damages are personal property, and are to be held and treated as other personal property of the infant defendants. And under our statutes the general guardian is entitled to receive all the personal property of his ward on giving a bond conditioned as required by the statute, approved by the surrogate or probate court appointing him. The courts have no power to disregard or change the conditions imposed by the Legislature. As a condition of directing the payment or delivery of the personal property of an infant in its hands, or subject to its order, to such general guardian, the court has the power to see to it and determine that the guardian has complied with the statute as to giving security.

This is not the case of a sale under execution, or by virtue of a

judicial decree, as in the case of partition, where the power to sell is a mere incident to the power to partition, and where a sale is made only when actual partition cannot be made without injury to the parties interested, and in which case the money derived from the sale is regarded as real property until an election by adults is presumed. As the infant is under disability and cannot elect, his share remains and is treated as real estate until he arrives at full age. This has always been the rule in partition for the reason stated. Horton et al. v. McCoy, 47 N. Y. 21, 27, 28. So where real estate is actually converted into money, by accident or by absolute necessity, so as to execute the will of a decedent, the proceeds of such real estate will be deemed and treated as real estate. Smith v. Kearney, 2 Barb. Ch. (N. Y.) 533.

In the case of a bankrupt, voluntary or involuntary, on the appointment of a trustee the real estate vests in him. If sold during the lifetime of the bankrupt, the surplus, if any, after paying all debts and expenses, is personal property, and goes to the administrator. If sold after the death of the bankrupt, such surplus goes to the heirs at law. Banks v. Scott, 5 Madd. 493. See Denham v. Cornell, 67 N. Y. 556, 562. Conversion is perfected by operation of law in the lifetime of the bankrupt, and he and his heirs and representatives must take the surplus, if any, as the law leaves it.

In Massachusetts and Pennsylvania it seems to be settled that the damages awarded to an infant for lands owned by him and taken in the exercise of the power of eminent domain are converted by operation of law out and out to personal property, and vest in the infant, and are to be held and treated as such, and that such award, once made and paid or deposited to his use during his lifetime, goes on his death before arriving at full age to his executor or administrator.

In New York, by operation of law, there is an absolute and out and out conversion of the real property of an infant taken in condemnation proceedings to personal property, and the conversion is absolute and perfect when the award is confirmed and the money deposited. The award then ceases to be real estate and becomes personal property. In the absence of a statute to the contrary, it is held as such and should be so dealt with by the courts. It is not for the court to legislate and direct that such award be held and treated as real estate, when in fact and in law it is personal property, and on the death of the infant goes to his executor or administrator. Having been converted by operation of law, it is beyond the power of the infant to reconvert it, and, of course, entirely outside the jurisdiction of the court to do so.

The result is that the sums awarded to the several infant defendants in this action will be directed paid to their general guardians, respectively, on petition accompanied by documentary evidence showing that a bond has been executed by such guardian with two sufficient sureties, approved and filed with the Surrogate's Court, in a penalty double the value of all the personal property of such infant and the probable amount of the rents, etc., of real estate that will come to his hands, as required by the Code of Civil Procedure.