## Philadelphia *v.* Commonwealth, Appellant.

*Rivers—Navigable rivers—Eminent domain—Constitution—Riparian rights — Wharves — Access to river—Property rights—Discontinuance of proceedings—Public service companies—Municipal and quasi municipal corporations—Damnum absque injuria—Delaware river bridge—Leasing property taken—Acts of April 8, 1868, P. L. 755, and July 9, 1919, P. L. 814.*

1. Riparian rights have been generally defined as the right of access to navigable rivers in front of one's lot and adjacent thereto, to make a landing wharf or pier for his own use or the use of the public, subject to the general rules imposed by the legislature for the rights of the public.

2. The right which the city of Philadelphia possesses as owner of water frontage on the Delaware River is the right of access to and the permissive use of the stream, subject to the right of passage in the public, plus the right given by the legislature by various acts to extend piers under lease into tide water of the river, and to have the use for dock purposes of definitely ascertained areas of water as appertaining to its property, with the right of dockage fees, and power to convey by deed.

3. While the property in riparian rights may differ in kind and quality from that in a pier, it is the riparian right of the owner that legalizes the existence of structures in place, and through the combination of the two, predicated on a license from the state, a value may be given the structures which they would not otherwise have.

4. The license to build a wharf does not enlarge the easement of property in the riparian owners.

5. The Act of April 8, 1868, P. L. 755, recognizes wharves as the subject of sale but the title of the Commonwealth in the bed of the river is not disturbed.

6. The purpose of the Act of July 9, 1919, P. L. 814, relating to the construction of the Delaware River bridge was to compensate those named in the act for injuries sustained in the taking of all species of property. The act did not contemplate the revocation of any license.

7. Such taking was not damnum absque injuria.

8. Riparian rights are property rights for which compensation is guaranteed by the constitution when taken.

9. Where the Delaware River Bridge Commission under the Act of 1919, has condemned and taken actual physical possession

of piers and riparian rights belonging to the City of Philadelphia, it cannot subsequently rescind its action in condemning the whole, and take part only of such property and return the remainder to the city; nor can it abandon the entire proceeding.

10. Where there has occurred such an actual taking under the power of eminent domain as invests the condemnor with title, and gives to the landowner a vested right to compensation, the former cannot be permitted to discontinue the proceedings without the latter's consent.

11. Such rule applies not only to public service companies, but also to municipal and quasi municipal corporations.

12. It seems that the Commonwealth, while it cannot sell the portion of the property condemned for the Delaware River bridge, which it seeks to return to the city, still it may lease it for a term of years, or until it is needed in connection with the bridge.

Argued April 22, 1925. Appeal, No. 262, Jan. T., 1925, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1921, No. 3549, on verdict for plaintiff, in case of Philadelphia v. Commonwealth. Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from award of jury of view. Before BART-LETT, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $402,000. Commonwealth appealed.

*Errors assigned* were various rulings and instructions, quoting record.

Fred Taylor Pusey, with him Randolph W. Childs, Michael F. Donnelly and George W. Woodruff, Attorney General, for appellant.—That the Commonwealth or any municipality has a right to abandon a condemnation of property which it has never possessed or paid for, is well established, and this right is to be liberally construed: Speer v. R. R., 255 Pa. 211; Franklin Street, 14 Pa. Superior Ct. 403; Snee v. R. R., 210 Pa. 480.

The taking, if any, of the city's property, was damnum absque injuria: Barclay R. R. v. Ingham, 36 Pa. 194; Degan v. Dunlap, 15 Phila. 69; Rundle v. Canal Co., 14 Howard 91; Susquehanna Coal Co. v. Wright, 9 W. & S. 9.

*Glenn C. Mead,* Assistant City Solicitor, with him *Haines D. Albright,* Assistant City Solicitor, and *Joseph P. Gaffney,* City Solicitor, for appellee.—Plaintiff's legal right to compensation for all that had been taken from it before April 21, 1922, continues to exist to this day, notwithstanding the passage on that date of the rescinding resolution: Dilts v. R. R., 222 Pa. 516; Wood v. Hospital, 164 Pa. 159; Siegfried v. R. R., 16 Pa. Dist. R. 614; Speer v. R. R., 22 Pa. Dist. R. 292.

Appellant's offer of proof of the resolution passed April 21, 1922, by the Delaware River Bridge Joint Commission was properly overruled and all assignments of error based thereon should be dismissed: Hoffman v. R. R., 157 Pa. 174; Brown v. Water Co., 213 Pa. 440.

Riparian rights are property: Walnut Street Bridge, 191 Pa. 153; Illinois v. Ill. Cent. R. R., 146 U. S. 445.

*Francis H Bohlen, Jr.,* and *Saul, Ewing, Remick & Saul,* for Pennsylvania Company for Ins. on Lives and Granting Annuities, Trustee, were not heard.

OPINION BY MR. JUSTICE KEPHART, June 27, 1925:

The easternmost side of Delaware Avenue, between Vine and South streets, is owned by the City of Philadelphia and is coterminus with low-water mark of the Delaware River. The legislature prohibited the appurtenant easements existing in the bed of the river from being attached to the land in the bed of the stream. The city, however, by deed from a former owner of the shore-line to low-water mark, became the owner of 130 feet of riparian rights on the west bank of the Delaware River between Race and Summer streets, and, under revocable

license from the Commonwealth, constructed Pier 11 from this riparian frontage, extending 540 feet to the pier-head line, and also a shorter pier known as Pier 11½, extending some sixty feet into the water.

The Delaware River Bridge Commission, by resolution of August 19, 1921, in appropriating the property necessary for the improvement, described the rights, properties and structures to be taken. The description included the riparian rights and structures, piers 11 and 11½, of appellant, within the points described from the shore, 542 feet, to a point in the pier-head line of the river, thence along that line 185 feet, thence back 539 feet to the shore line.

On October 19, 1921, the commission, by another resolution which recited the preceding one, acknowledged its inability to agree with the owners, lessees or occupiers on the compensation due for the rights taken, declared it was their intention, after sixty days, to acquire and take possession of the land, structures and rights described in the survey, and directed the secretary to give notice of such intention to those interested. This action followed the statute. Notice was given plaintiff in November, pursuant to this resolution. This was followed by an actual physical taking by the commission of a part of appellee's property. The commission, April 21, 1922, by resolution, rescinded the prior action, delimiting the quantity of land and rights taken. In the proceedings to assess damages, the court below refused to consider the rescission, because title to all the land and rights had passed and were vested in the Commonwealth; the taking was complete. An award in favor of the city followed, which was sustained by the court below.

The question for our consideration is whether the rescinding resolution was effective to delimit the taking; if not, was the taking damnum absque injuria? Further, it is contended the municipality's rights in the Delaware were not entered upon or used, as they were not necessary for the construction of the bridge, and

will be substantially the same after the bridge is completed.

The Commonwealth of Pennsylvania, in conjunction with the State of New Jersey, determined to provide better facilities for transporting persons and property over the Delaware River by means of a bridge. It is a great public project of inestimable benefit to both states, particularly to the two cities thus joined. Long before the effective legislation providing the ways and means to commence and finish the structure, there existed along the banks of the Delaware valuable easements termed riparian rights. These incorporeal rights have been generally defined as the right of access to navigable rivers in front of the abutting owner's lot and adjacent thereto, and the right to make a landing wharf or pier for his own use or the use of the public, subject to the general rules imposed by the legislature for the rights of the public: Dutton v. Strong, 1 Black 23, 31; Railroad Co. v. Schurmeir, 7 Wallace 272; Yates v. Milwaukee, 10 Wallace 497, 504; Weber v. Board of Harbor Commissioners, 18 Wallace 57, 64-5; Potomac Steamboat Co. v. Upper Potomac Steamboat Co., 109 U. S. 672, 682; Weems Steamboat Co. v. Peoples' Steamboat Co., 214 U. S. 345, 355. What appellee possessed in the ownership of this water frontage on the Delaware River consisted of the right of access to and the permissive use of the stream, subject to the right of passage in the public (Barclay R. R. & Coal Co. v. Ingham, 36 Pa. 194, 200), plus the right given by legislation to extend piers under lease into the tidewater of the river, to have the use for dock purposes of definitely ascertained areas of water as appertaining to their property, with the right of dockage fees paid to them by those who used the piers and water areas for loading and unloading ships' cargoes; also to convey such property by deed. While these rights are limited to passage on the water over the land in the bed of the river, and incidents thereto, they are free grants from the Commonwealth, the holder of the title to the

river bed: The Tinicum Fishing Co. v. Carter, 61 Pa. 21, 30. The Commonwealth has benefited by permitting its property to be developed by its agents or citizens. Large investments of public and private capital have been made on account of it. This development has proven most useful to the city as well as the state at large. To the City of Philadelphia has been delegated, through the director of wharves, the authority to license the construction of these extensions. While the property in a riparian right may differ in kind and quality from that in a pier, it is the riparian right of the owner that legalizes the existence of the structure in place, and, through the combination of the two, predicated on a license from the State, a value may be given the structures which they would not otherwise have.

The license to build a wharf does not enlarge the easement or property in the riparian owner. The Act of April 8, 1868, P. L. 755, recognized wharves as the subject of sale, but the title of the Commonwealth in the bed of the river was not disturbed by the act. As an owner of riparian rights, the city had constructed the two piers and possessed valuable rights appurtenant to the easement above described.

When the legislature passed the enabling Act of July 9, 1919, P. L. 814, it stated its express will in unmistakable language that, notwithstanding prior decisions, it recognized conditions existing, and, considering our precedent legislation, it was the State's desire to compensate the persons named in the act for injuries sustained in the taking of all species of property. The legislature may not only be generous, but it must also be just. The different species of property liable to be taken as enumerated, the persons or bodies from whom taken, and the mandatory direction imposed by the act, should be examined. The Act of July 9, 1919, P. L. 814, after reciting the purpose in its preamble, arranging for a commission with enumerated powers, designating the things Philadelphia should do, provided, in section 5, as

follows: "For the purpose of carrying into effect the provisions of this act, the joint commission is hereby authorized to purchase in the Commonwealth of Pennsylvania such lands, structures, rights of way, franchises, easements, or other interests in lands, including lands under water and riparian rights, of any person, railroad, or other public or private corporation or municipality, necessary for the building of said bridge and the approaches thereto, upon such terms, prices, or considerations as may be considered by it to be reasonble and can be agreed upon between it and the owner or owners." Section 6 provides for condemnation if no agreement can be reached. What appellant seeks to do is to check the legislative mandate; the commission is merely an agent of the government, subservient to the law of its creation; it is not the government.

The dual ownership as well as relationship should be kept in mind. Here is the Commonwealth's money to be expended as it directs; it is not the money of an individual or private corporation, nor is the act an authority to a quasi public corporation to condemn. The city and others own riparian rights on the river; by license, the Commonwealth permits it to build on its ground (the bed of the river) wharves by means of which it may more fully exercise the right and duty of government for the upbuilding of the State. The city is not engaged in the shipping and docking business; what it constructs is for the use and accommodation of the public shipping, yielding a charge barely sufficient to meet the up-keep; "municipalities are supposed to act primarily for the public good,—not to earn dividends." Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24, 37. The State calls these structures property that may be transferred: Act of 1868, supra. By the Act of April 9, 1867, P. L. 980, where a license is granted to construct a bridge in the river Dalaware which may affect an easement such as a riparian right, the injuries are to be compensated in damages. With these matters undis-

turbed by the Act of 1919, can there be any doubt, after reading section 5 of that act, what the legislature meant when it said "lands," "structures," "riparian rights" necessary for building the bridge should be purchased and paid for amicably, or, if necessary, through condemnation proceedings? At an early date it was held that these licenses to build piers were revocable at will, and, at times, through a conflict of grants, an implied revocation took place. It was decided that if damage followed there could be no recovery. A review of the earlier cases and the governing principles may be found in Rundle v. The Delaware & Raritan Canal Co., 14 Howard 79, 91. Instead of dealing with revocation of the license directly or impliedly, or pleading damnum absque injuria, it directs the commission to pay for the structure and riparian rights taken. There was no attempt to revoke the license by the State, but, on the contrary, the Act of 1919 distinctly recognized the structure's existence. There was no doubt as to the duty enjoined by the act in the resolution of condemnation. It described piers 11 and 11½ and the riparian rights as part of the property taken, and directed the officers to make an effort to agree with the owners on price or value. Had this not been done voluntarily, the law would have compelled it.

Riparian rights are property rights for which compensation is guaranteed by the Constitution when taken. Their taking in connection with water companies under eminent domain has been frequently so held. As to lands or rights owned, such as these, our decision in Walnut Street Bridge Construction, 191 Pa. 153, settles the question beyond controversy. There a water frontage on the Schuylkill River above but not abutting on Walnut Street was diminished in value by the construction of a bridge which was not high enough to allow masted vessels to pass under it into the water in front of the riparian owner's wharf. In affirming the award of damages, the court said, in substance, since the Act of Febru-

ary 7, 1818, 7 Sm. L. 34, and April 9, 1833, P. L. 127, which conferred the right to erect wharves on the banks of the Delaware and Schuylkill Rivers, a private right of property was conferred which could not be invaded either by the Commonwealth or the city without compensation. The Constitution of 1874, article 16, section 8, explicitly so provides. And since the adoption of the present Constitution it cannot be doubted but that injury to private property or franchise entitles the owner to compensation. The Constitution obliterated the distinctions theretofore made in allowing compensation for damages in taking, or injuring. The city in that case bore the same relationship to the State as the Commission does in this. There is no analogy between that decision and Scranton Gas & Water Company v. Scranton City, 214 Pa. 586, helpful to appellant. The distinction is there pointed out in discussing the difference between an easement obtained through laying gas mains in the streets of a city and the rights of an abutting owner, both damaged by change of grade. The latter is entitled to compensation, while the former is not. Appellee here is like the abutting owner.

The "value" of the riparian rights and structures is a material part of the case. There the field is open for contest, but the tenure by which the riparian owner held its pier on the river bed, and the risks it ran of later having it removed by order of the State or its agent, are incidents affecting the value of the property in place; as long as the sovereign state fails to exercise its right of revocation, third persons will have difficulty in taking advantage of it: Ben Avon Borough v. Ohio Valley Water Co., 68 Pa. Superior Ct. 561, 582. Such precariousness of title does not in the slightest degree impair the owner's constitutional right to compensation for injury sustained as the direct effect of the exercise of the State's right of eminent domain by the bridge commission, although it does, no doubt, affect the market value of the thing taken.

The duty to determine what particular property was necessary to be acquired was imposed on the commission. They exercised that discretion and performed the duty by taking physical possession of plaintiff's property and destroying part of it. May they subsequently take part of these rights and return the remainder to the riparian owner, or may they abandon the entire proceeding? No rule has been laid down which will prevent municipal corporations from receding from a proposed condemnation before the landowner has obtained final judgment for his damages, unless the corporation meanwhile has actually taken possession: Speer v. Monongahela Railroad Co., 255 Pa. 211, 214; Franklin Street, 14 Pa. Superior Ct. 403. Where an actual taking occurs under the power of eminent domain such as invests the condemnor with title, and gives to the landowner a vested right of compensation, the former cannot be permitted to discontinue the condemnation proceedings without the latter's consent. This rule applies not only to railroads and such public service corporations as ordinarily have the power of eminent domain, but also to municipal and quasi-municipal corporations: Wood v. Trustees of the State Hospital for the Insane, 164 Pa. 159. To the same effect is Dilts v. Plumville R. R. Co., 222 Pa. 516. Here the commission entered on the end of the pier, cut it off, and placed thereon a bridge pier; its contractor has taken actual possession of the entire pier. These facts are admitted. Under the circumstances, the resolution of rescission came too late and the court below was clearly right in refusing to consider it. There is testimony of impairment of the easement itself through interference with the movement of ships.

Appellant says the commission cannot use the riparian rights thus acquired, and, though it must take a part of them it should not be compelled to pay for the taking. This is a novel proposition, without merit.

A question has arisen as to whether the State could resell so much of the rights acquired not necessary at this time for the bridge. Though it may not be possible to sell, there is nothing to prevent the Commonwealth from leasing for a term of years or until needed in connection with the bridge.

The case was carefully tried in the court below. The learned president judge was extremely careful in his presentation to the jury; his charge was free from error.

The judgment is affirmed.