LAFONTAINE'S HEIRS ET AL. *v.* LAFONTAINE'S HEIRS ET AL.

[No. 165, October Term, 1953.]

312

314

*Decided August 25, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John P. Labofish,* with whom were *Leon L. Sclawy* and *Thomas Elmo Jones* on the brief, for the appellants.

*John Raymond Fletcher* and *George A. Wilkinson* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

Annie N. LaFontaine, a resident of the District of Columbia, owned some twenty acres of land in Prince George's County. In 1950, the State Roads Commission, having determined that some two acres of the land were needed for highway construction and being unable to agree with Mrs. LaFontaine as to value, proceeded as authorized by the Constitution, Article 3, Sec. 40B, and the statute, Code (1951), Art. 89B, Sec. 9, by depositing with the clerk of the Circuit Court for Prince George's County a check for $13,770.00, which it estimated to be: "* * * the fair value of the land and improvements taken", and taking possession of the needed land. Filed simultaneously with the deposit was a petition which recited the need for the immediate taking, described the property and prayed its condemnation under the provisions of Code (1951), Art. 33A. Annie N. LaFontaine died in 1951. By her will, she gave, bequeathed and devised unto her husband, James A. LaFontaine, an absolute estate in all of her real and personal property. He had predeceased her. In 1953, The Lincoln National Bank of Washington, the executor of her estate, filed a petition in the Circuit Court for Prince George's County, in which it set forth the facts which have been recited and alleged that under the laws of the District of Columbia, the devise and bequest to James A. LaFontaine lapsed as to real and personal property in the District, and that the heirs and next of kin of Annie N. LaFontaine would take such property. The petition alleged further that under the provisions of Code (1951), Art. 93, Sec. 351, a devise, legacy or bequest does not lapse by reason of the death of the devisee or legatee during the lifetime of the testator, and requested the court to declare

whether the devise of the Prince George's County real estate to James A. LaFontaine had lapsed. In addition, the petitioner asked the court to declare whether the money in the registry of the Circuit Court for Prince George's County is personalty, payable to the executor of the estate of Annie N. LaFontaine, or whether it is to be considered as real estate in Prince George's County. All of the heirs and next of kin of both Annie N. and James A. LaFontaine were brought before the court.

On the petition of the executor and the answers of the heirs and next of kin, the lower court "Adjudged, Ordered and Decreed": (1) that the will of Annie N. LaFontaine is to be construed according to the law of Maryland, insofar as it affects real estate located therein; (2) that the devise of Maryland real estate did not lapse but that upon the death of Annie N. LaFontaine, the real estate descended to the heirs of her deceased husband, James A. LaFontaine; (3) that the money deposited in court in payment for the two acres of land, entered on by the State Roads Commission before the death of Annie N. LaFontaine, is to be treated as real estate, and as such, descended to the heirs of James A. LaFontaine.

The appeal before us does not challenge the first and second parts of the decree, and it is affirmed as to them. The point on which the parties differ is whether the money in the registry of the court was real estate or personal property at Annie N. LaFontaine's death.

It is established law that if property is taken before the death of the owner, the right to compensation is not considered incident to the real estate but is a chose in action, passes to personal representatives, and will not be included in a devise of real estate taken. If the taking of the property did not occur until after the death of the owner, the heirs, or if there be a will, the devisees of the land taken are entitled to the compensation. *Nichols, Eminent Domain,* 3rd Ed., Sec. 5.5 and 5.5(1) (2); *Kent v. Co. Comm. of County of Essex,* 10 Pick. 521; *Neal v. Knox and Lincoln R. R. Co.,* 61 Me.

298; *Welles v. Cowles,* 4 Conn. 182; *Briegel v. Briegel* (Pa.), 160 A. 583, 584; *New York Central and H. R. R. Co. v. Cottle,* 168 N. Y. S. 463, affd. 229 N. Y. 514, 129 N. E. 896; *In re Nelson,* 181 N. Y. S. 908; *Sanders v. Smithfield* (N. C.), 19 S. E. 2d 630, 632; *U. S. v. Baker,* 183 F. 280, Ann. Cases, 1912C, 595; C.J.S., *Eminent Domain,* Sec. 203; 18 Am. Jur., *Eminent Domain,* Sec. 237.

The difficulty lies in determining at what point the taking occurs, for inevitably there is a point in valid proceedings by which land seized which must be said to be the *punctum temporis* of the taking. The lower court did not have the benefit of evidence to establish when entry on the land took place, when construction of the road began, when the improvements on the land were destroyed, how far construction of the road had progressed before Mrs. LaFontaine died, whether she waived service of process, whether she validly could, or intended to, challenge the right of the Commission to condemn, or whether, in fact, she acquiesced in the right to condemn and sought merely to increase the amount of the compensation to be received. We think that without the benefit of an adequate factual background, it cannot be determined with even approximate precision whether there had or had not been a taking while Mrs. LaFontaine lived.

There is no uniformity in the decisions throughout the country as to the point when the taking occurs because of the differences in the statutes of the several States. In States where payment is required before the landowner can be divested of ownership or possession, the condemnation is accomplished by prior judicial proceedings and the taking does not occur until the compensation awarded has been paid or tendered. As to condemnations generally, the requirements of Sec. 40 of Article 3 of the Constitution make this the Maryland rule and this Court has declared, where the exceptions to that provision were not involved, that an authorized taking, under the power of eminent domain, does not happen until compensation is paid. *Dunne v. State,*

162 Md. 274; *Building and Loan Association v. Safe Deposit and Trust Company,* 166 Md. 351.

In States in which land may be taken for public use by administrative decision and action, the filing of the formal act of the responsible agency usually fixes the time and extent of the taking: "* * * and when a formal act of taking is not required, the first actual authorized physical interference with the property affected marks the *punctum temporis* of the taking." *Nichols, Eminent Domain,* 2nd Ed., Sec. 439, page 1152. In the take and then pay procedures, as in the pay before you take, the essential which must be determined is the point when there concur the vestings of the right of the condemnor to take and the right of the owner to full compensation. It has been held that this point is—the taking occurs— when a condemnor entitled to condemn loses the right to abandon the proceedings. *In re Twelfth Avenue South* (Wash.), 132 Pac. 868. The right to abandon ceases, the cases hold, when compensation has been paid or tendered, or the authorized appropriation of land for public use actually has taken place. *Nichols, Eminent Domain,* 2nd Ed., Sec. 417, p. 1097; C.J.S., *Eminent Domain,* Sec. 335(b); *City of Philadelphia v. Commonwealth* (Pa), 130 A. 491; *In re Certain Lands, etc.* (Pa.), 70 A. 2d 847; *State v. Flamme* (Ind.), 26 N. E. 2d 917, 919; *State v. Deutschman* (Mo.), 1940, 142 S. W. 2d 1025, 1027-1028. Maryland has followed this theory. In *Petroli v. Baltimore,* 166 Md. 431, the City neither paid nor tendered an unappealed condemnation award. The appellants sought damages for the City's delay in carrying out the provisions of the award. The Court held that they could not prevail and also that they were not entitled to recover the award. Judge Offutt said for the Court: "Until the condemning corporation *has actually taken the property,* as in *Pennsylvania R. Co. v. Reichert,* 58 Md. 261, or until title has become vested in it by payment or tender of the award, the rights of the parties are so far ambulatory that the condemning corporation may abandon either the entire

project or its right to take the particular property at the award." (Emphasis supplied)

The clear implication is that an authorized physical seizure of the property for public use vests in the landowner the right to just compensation and marks the end of the right of the condemnor to abandon.

In Maryland there are two constitutional exceptions to the rule of paying before taking, which may be said to permit a taking before paying. The first, Sec. 40A of Article 3, provides that if the property is in Baltimore and is needed by the State or the City, it may be taken before a jury values it, if an appraised value is paid to the owner or into court and the payment of any additional sum which a jury may subsequently award is secured. The other is the provision under which the State Roads Commission acted in this case, Sec. 40B of Article 3. This provides that if in the judgment of the Commission, the State needs a property for highway purposes, the law may provide that "such property may be taken immediately" upon payment to the owner or into court of its estimated value, provided the law also requires the payment of any subsequent additional award by a jury. The statute adopted to implement this section, Code (1951), Art. 89B, Sec. 9, contains all the essentials prescribed by the Constitution and has been upheld. *State Roads Commission v. Franklin,* 201 Md. 549, 95 A. 2d 99.

We think that where the State Roads Commission is entitled to act under Section 40B of Article 3 of the Constitution and Section 9 of Article 89B of the Code, and complies with all their requirements, the taking occurs when there is an actual appropriation of the land to highway purposes.

Authorized temporary occupancy or momentary entry for purposes of survey or inspection is not a taking and may be done without compensation. The Constitutional prohibition against the taking of private property means: "* * * *taking* the property from the owner, and *actually* applying it to the use of the public. It does not mean the

preliminary measures necessary in such cases." *Steuart v. Baltimore,* 7 Md. 500, 516. See, too, *City of Philadelphia v. Commonwealth, supra,* at page 494 of 130 A. The distinction between a possession which may be legal, yet not constitute a taking, and a possession and use which amounts to a taking is pointed up by Judge Chesnut in *United States v. Certain Parcels of Land, etc.,* 61 F. Supp. 164, 169.

The appellees argue that there was no taking in this case because the record does not show that Annie N. LaFontaine was served or published against. From this they make two contentions: the first, that the court was without jurisdiction, and the second, that the Commission had not established its right to take the property before Mrs. LaFontaine died, so that at her death the correlative rights of the condemnor and the owner were not vested. First, we were told at the argument—and the assertion was not challenged—that Mrs. La-Fontaine's lawyer, who had been in negotiation with the Commission as to the price to be paid for the land, had accepted service on her behalf and agreed to file an answer. If the assertion is accurate, this is a complete answer. As to the second contention, it is not here claimed or even suggested in brief or argument, that the State Roads Commission in fact did not have authority to condemn or to enter before condemnation, or that Mrs. LaFontaine ever so contended or intended to so contend. The pleadings speak of improvements on the two acres taken and the amount paid into court indicates that the improvements were substantial. Both sides agreed at the argument that the road has been completed across the two acres as well as the rest of its length. Obviously, its construction entailed the destruction of the buildings. The record does not reveal whether Mrs. LaFontaine agreed that the buildings might be destroyed, either personally or through her attorney. If she did, this might well be an acquiescence in the right of the State to take, and so eliminate that question from the case as a matter of law.

The lower court rested its decision on two conclusions: one, that title had not passed at the time of the death of Mrs. LaFontaine, and the other, that the State Roads Commission could have abandoned the condemnation at any time before her death. There can be a taking which gives rise to a vested right to compensation before the passage of a fee simple absolute title. *Nichols, Eminent Domain,* 2nd Ed., Sec. 107, puts it thus: "It is well settled that a taking of property within the meaning of the constitution may be accomplished without formally divesting the owner of his title to the property or of any interest therein. Constitutional rights rest on substance, not on form, and the liability to pay compensation for property taken cannot be evaded by leaving the title in the owner, while depriving him of the beneficial use of the property. * * * when an interference with the use and enjoyment of land * * * consists of actual entry upon land and its devotion to public use for more than a momentary period, or of an injury of such a character as to substantially oust the owner from the possession of the land and to deprive him of all beneficial use thereof, there is a taking of property in the constitutional sense, whether there has been any formal condemnation or not." See also *Hurley v. Kincaid,* 285 U. S. 95, 76 L. Ed. 637; *N. Y. Central R. Co. v. Cottle, supra;* and cf. *Dunne v. State, supra,* where the appropriation to public use was *unauthorized.* In *United States v. Certain Parcels of Land, etc., supra,* it is pointed out that even the title which the Federal Government takes under statute, which authorizes immediate occupancy of land to be taken for public use, is defeasible, the Government being divested if there was no authority in law to take the property. This is so even though the statute expressly says that title is vested in the Government on the taking and the right to compensation shall correspondingly vest in the landowner.

On the second point, the lower court held that the constitutional and statutory right to take before condemnation does not change the principle of law that the

condemnor may abandon the proceedings at any time before just compensation has been paid or tendered. It held that: "* * * by the filing of a petition to condemn decedent's land and by payment of the estimated fair value of said land into the registry of the court, * * *" the Commission was not precluded from abandoning the proceedings. As we have noted, it was agreed at the argument that the road has been constructed and it is to be presumed that the buildings on the land were destroyed. Beyond question, the destruction of the improvements and the building of the road constituted a taking in the constitutional sense and entitled the owner at the time to compensation. The record does not reveal who was the owner at the time. If, as a fact, there was an authorized actual physical appropriation to public use by the construction of a road across the property before Mrs. LaFontaine died, such an appropriation, coupled with the payment into court of the estimated fair value of the land and improvements taken, and the absolute obligation to pay any additional amount awarded by a jury, constituted a taking which precluded the abandonment of the proceedings by the Commission. *Petroli v. Baltimore; City of Philadelphia v. Commonwealth; State v. Deutschman,* all supra. Not only the underlying purpose but the language used in Sec. 9 of Article 89B indicate strongly that once the Commission avails itself of its benefits it may not abandon. It speaks of "the land and improvements *taken*". The landowner may withdraw the deposit at will. He is entitled to any additional amount awarded, he must refund some if the jury awards less. On notice that he desires condemnation proceedings "it shall be *the duty*" of the Commission within thirty days to institute such proceedings, and "it shall be *the duty*" of the court to hear and determine such proceedings as soon thereafter as practicable". (Emphasis supplied)

The case, then, comes to this. If Mrs. LaFontaine's land and improvements were lawfully appropriated for highway uses during her lifetime there was an authorized

324

taking, and the compensation available for the asking and the right to any compensation thereafter awarded by a jury was personal property owned by her at her death. If the appropriation was not authorized, or, being authorized, was made in fact after Mrs. LaFontaine died, the fund would, we think, be treated as real estate. Elements in the validity of the appropriation would be whether or not she accepted service, whether she intended to challenge the right to take; or whether she acquiesced in the taking and intended to argue only about value—whether she agreed that the buildings should be torn down and the road built. The record shows none of this although much of it is hinted at or may be surmised. We think that justice calls for a remand of the case, without affirmance or reversal, for the production of evidence to show what actually took place before Mrs. LaFontaine died.

*Decree affirmed, except so much as dealt with the funds in the registry of the Circuit Court for Prince George's County; as to so much, the case is remanded, without affirmance or reversal, for further proceedings in conformity with this opinion. Costs in this Court to be paid out of the fund.*