CONCANNON et ux. *v.* STATE ROADS COMMISSION

[No. 141, September Term, 1962.]

*Decided December 5, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, MARBURY and SYBERT, JJ.

Argued on motion to dismiss by *William F. Mosner,* with whom was *Gordon G. Power* on the brief, for appellants.

Argued on motion to dismiss by *Earl I. Rosenthal* and *John J. Schuchman,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appeal in this case is from an order granting the appellee leave to amend its petition and accompanying plat in condemnation proceedings. The case is now before us on the appellee's motion to dismiss the appeal. The immediate question is whether or not the order is final and hence appealable, but the determination of that question requires some consideration of the actual or potential rights of the parties just before this amendment was permitted and of the effect of the amendment thereon.

The appellee, the State Roads Commission (the Commission), initiated proceedings in the Circuit Court for Baltimore County to acquire by eminent domain, pursuant to Sec. 40 B of Art. III of the Constitution and §§ 9-18 of Art. 89 B of the Code (1957), 1,482.5 square feet of land in fee simple and slope and drainage easements in an additional 360 square feet of land owned by the appellants, the Concannons, at the southwest corner of Padonia Road and Broad Avenue. The Commission sought the right of immediate entry and accordingly filed with its petition on September 6, 1960, its plat No. 24071, duly approved on July 27, 1960, showing the above mentioned land to be taken in fee and for easement purposes, and the Commission paid into court the sum of $7,500.00, representing its estimate of the fair market value of the property and rights to be taken and the resulting damage to the remainder of the property. On October 25, 1960, the Concannons withdrew the amount deposited, without prejudice, and continued negotiations with the Commission.

The Concannons assert in their brief that the original plat (No. 24071) shows that their house was not within the easement area, but was immediately adjacent thereto. The Commission asserts in its motion to dismiss the appeal that this plat showed that the corner of the house was in the easement

area. The Concannons state in their brief that the negotiations above referred to concerned a determination of the exact area of taking and just compensation, since the Commission indicated that its taking, when actually laid out on the ground, would encompass a corner of the appellants' home, and they further say that "[i]t was finally determined by the Commission that only a corner of the porch would necessarily be within the easement area, and [that] with this understanding the Concannons, on April 7, 1961, notified the Commission that they would accept the deposit of $7,500.00 as full payment."

The Commission caused a new plat (No. 25127) to be prepared, which is dated April 11, 1961. It does not appear to have been "finalized" pursuant to § 14 of Art. 89 B by the approval of the Chairman of the Commission and by recording at any time prior to the date of the order permitting the amendment now in controversy. The Commission has attached copies of each plat to its motion to dismiss. It is not clear from a layman's examination of the first plat whether the Concannons or the Commission are right about what it shows as to the position of the house with relation to the easement area. The new plat calls for a taking of 1,500 square feet of the Concannons' land in fee (an increase of 17.5 square feet, as to which there seems to be no serious controversy) and a relocation and decrease of 35 square feet (from 360 to 325) in the easement area, and the new plat clearly shows that no part of the Concannons' house is within the slightly relocated and reduced easement area. The Commission, evidently because of the relocation and reduction of the easement area, asserts that the fair market value of the property taken and of the damage to the remainder is $1,900.00. It seeks a refund of $5,600.00 of the amount withdrawn by the Concannons, but does not press for it prior to the termination of the condemnation proceedings.

The appellants' brief informs us that "[w]ithout further proceedings, construction was begun on August 1, 1961, and the portions of appellants' property shown on unofficial Plat No. 25127 were utilized by the * * * Commission. Road construc-

tion and drainage facilities were completed about two weeks thereafter."

The matter came on for hearing before the Property Review Board on September 29, 1961. The Commission sought to introduce evidence as to the value of the reduced taking shown by Plat No. 25127, but the Concannons objected and demanded that the case proceed under the original Plat No. 24071. The Commission announced that it would seek authority from the Circuit Court to substitute the new plat for the old, proceedings before the Board were suspended, and the proceedings for amendment which give rise to this appeal ensued. Though there was no formal hearing on the Commission's petition to amend, there were one or more informal conferences between the court and counsel for the respective parties, each side submitted a memorandum, and the court filed an opinion upholding the Commission's right to amend and on May 21, 1962, entered an order granting leave to amend. The appeal is from that order.

Included in the record is a memorandum signed by the trial judge stating that at the conference with counsel pertaining to the property owners' objections to the Commission's petition to amend, "it was made known to the Court and not objected to by either party, that prior to the hearing before the Property Review Board and prior to the filing of the Petition to Amend, construction of the road improvements had been begun and completed on the Concannon property [and that the] Court's opinion of May 21, 1962, was rendered with this as one of the admitted facts of the case."

The Commission contends that the construction work was done in accordance with the new plat. The appellants concede that if there had been no taking prior to May 21, 1962, the date of the amendment, the Commission could not only have amended, but could have abandoned the entire project. They contend, however, that the taking occurred prior to that date, that at the time when it occurred the new plat (No. 25127) had no validity, and that the taking was of the property as delineated on the original plat (No. 24071), that it was of the entire property thereby shown as the property to be taken,

and that the Commission cannot change its mind and return a part of that which it has taken, unless the property owners from whom it was taken should assent thereto, and that they have not consented. The Commission contends that it has taken only what was shown by the new plat.

On this motion to dismiss the appeal we are, of course, not undertaking to determine the merits of the case. As our statement of the controversy shows, there is some dispute as to the facts, and with regard to the law our present question is not whether the trial court was correct or incorrect in permitting the Commission to amend its petition and plat, but whether or not the order is a final and hence appealable order under § 1 of Art. 5 of the Code (1957). That section provides in part: "Any party may appeal to the Court of Appeals from any final judgment or determination of a court of law in any civil suit or action * * *." This section was enacted in its present form by § 4 of Ch. 399 of the Acts of 1957. So far as here pertinent, it differs from its predecessors, § 2 of Art. 5 of the Codes of 1888, 1912, 1924, 1939 and 1951, which involved no change from § 3 of Art. 5 of the Code of 1860 (the antecedents of which go back at least to Sec. 6 of Ch. 87 of the Acts of 1785), by the inclusion of the word "final" before "judgment or determination." In view, however, of the long continued construction of the earlier statutes, this change was only a codification of the established rule. See 2 Poe, *Pleading and Practice* (Tiffany Ed., 1925), § 826, pp. 797-98, 800-01, and *City of Baltimore v. Moore,* 209 Md. 516, 121 A. 2d 857 (1956) as to the law prior to the enactment of § 4 of Ch. 399 of the Acts of 1957.

With regard to the time of taking and the time after which condemnation proceedings may not be abandoned by the condemnor, cases which were decided prior to the adoption of Sec. 40 B of Art. III of the Constitution in November, 1942, or which were not initiated thereafter in conformity with that section and § 9 of Art. 89 B of the Code (1957), are of little, if any, relevance in a case such as this which is governed by these early taking provisions. The rights of the property owners here sought to be asserted depend upon whether or not

there had been a taking by the Commission under those provisions and in accordance with the first plat. The time of taking in an "early taking" case is to be determined by the rules stated in *LaFontaine's Heirs v. LaFontaine's Heirs*, 205 Md. 311, 107 A. 2d 653. It was there held that "where the State Roads Commission is entitled to act under Section 40B of Article 3 of the Constitution and Section 9 of Article 89B of the Code, and complies with all their requirements, the taking occurs when there is an actual appropriation of the land to highway purposes." Whether there has or has not been such a taking of the entire easement area shown on the first plat is the crux of the property owners' case here.

The order allowing the Commission to amend which is now under attack eliminated from the case the property owners' claim for the most valuable part of their property which they assert has been taken by the Commission, and it precludes them from pressing this claim further. *If* the property had actually been taken, as the appellants assert, they had acquired a right, under the constitutional provision against the taking of private property for public use without just compensation, to receive compensation for the property actually taken. *LaFontaine's Heirs, supra,* 205 Md. at 323; *City of Philadelphia v. Commonwealth,* 284 Pa. 225, 130 A. 491, 494.

We agree with the holding of the able trial judge that eminent domain proceedings can be amended at the instance of the condemnor so long as there is no prejudice to any substantial right of the property owners. When this matter was decided in the Circuit Court, amendments were expressly provided for by § 4 of Art. 33 A of the Code (1957) as to proceedings under that Article. This section granted to the court "the same power to permit amendments of the petition * * * as in other actions at law * * *." See *Brack v. M. & C. C. of Baltimore,* 125 Md. 378, at 390, 93 A. 994. It seems that the proceedings in the instant case have not yet been transformed into proceedings under Art. 33 A, and as of June 1, 1962, § 4 of Art. 33 A was repealed by § 1 of Ch. 36 of the Acts of 1962. We think, however, that proceedings under § 9 of Art. 89 B constitute an "action" within the meaning of Maryland Rules 5 a and 5 w, that a petition and a plat filed under that

section constitute "pleadings" within the meaning of Rule 5 v, and that they may be amended in accordance with Rule 320. That Rule, as did its predecessor (Art. 75, § 39 of the 1951 Code, which was repealed by § 1 of Ch. 399 of the Acts of 1957), provides (Rule 320 a 1) that "[t]he court may permit any of the proceedings, including * * * pleadings * * * to be amended so that the case may be tried on its merits." This is, of course, simply a rule of practice and procedure and its exercise may not override provisions of substantive law. We think that it was applicable to the order appealed from whether the proceedings were at the time of its entry still under Art. 89 B or were under Art. 33 A, and we see no reason why it should not continue to be applicable to proceedings under Art. 33 A after the repeal of § 4 of that Article. We take it that the purpose of § 1 of Ch. 36 of the Acts of 1962 was to remove from the Code statutory provisions which had been superseded or rendered superfluous by the Maryland Rules.

The trial court's opinion recognized that an amendment could not be allowed if its effect would be to prejudice a substantial right of the property owners. The appellants claim, however, that this was the effect of the order appealed from and that it did prejudice a substantial right of theirs, which they claim had become vested. The trial court's order was based upon the premise that there was no such prejudice, and it expressly states that leave was granted "[p]ursuant to Memorandum Opinion heretofore issued." Though there is no appeal from the opinion of a trial court, it seems clear that the order granting leave to amend did, as a practical matter, determine the property owners' principal claim adversely to their contention, that it deprived them of the means of proceeding further to assert and enforce that claim, and that this was its intended effect. Since it thus involved an adjudication on the merits, it was not merely an order allowing an amendment, and we therefore think that it is not within the rule that an order granting or denying leave to amend is within the discretion of the trial court and is not ordinarily at least subject to review on appeal. (As to the usual rule see 2 Poe, *op.*

*cit. supra,* § 190, and cases cited in 2 M. L. E., *Appeals,* § 423, n. 20.)

In view of the effect of the order as determining the principal claim of the property owners and as depriving them of the means of proceeding further to enforce the right which they assert, we are further of the opinion that it constitutes a final order within the meaning of § 1 of Art. 5 of the Code (1957) and hence is appealable thereunder. See *Schulze v. Fox,* 53 Md. 37 (refusal to allow defendant to plead limitations to new cause of action alleged in amended declaration); *State, Use of Bickel v. Pennsylvania Steel Co.,* 123 Md. 212, 91 A. 136 (quashing of summons preventing further prosecution of suit); *Hunt v. Tague,* 205 Md. 369, 109 A. 2d 80 (also a quashing of a return of summons); *Northwestern National Ins. Co. v. Rosoff,* 195 Md. 421, 433, 73 A. 2d 461 (refusal to implead third party defendant); *City of Baltimore v. Moore,* 209 Md. 516, 523, 121 A. 2d 857 (refusal to require joinder of Workmen's Compensation Act employer as plaintiff in suit by injured employee against third party); *Pearlman v. State,* 226 Md. 67, 172 A. 2d 395 (denial to indigent defendants in a criminal case of a transcript to be furnished at public expense for use on an application for a new trial). Cf. *Allen v. Glenn L. Martin Co.,* 188 Md. 290, 52 A. 2d 605 (remand to Commission of Workmen's Compensation case, cutting off appeal). In *Hazlehurst v. Morris,* 28 Md. 67, at 71, and in *Guerreni v. Sainsbury,* 139 Md. 246, at 251, 114 A. 874, the test of finality which we have stated was recognized but was found not to have been met. In *Eisel v. Howell,* 220 Md. 584, at 586, 155 A. 2d 509, an order which did not settle or conclude the rights of any party or deny him the means of proceeding further was held not appealable.

We hold that the order is appealable and therefore deny the motion to dismiss. We repeat that we are not passing on the merits of the controversy, and we may observe at this time that we have some doubt as to the sufficiency of the facts disclosed by the record to enable us to do so.

*Motion to dismiss appeal denied, costs to abide the further order of this court.*