JOSEPH ERNEST GLENN *v.* STATE
ROADS COMMISSION OF THE STATE
HIGHWAY ADMINISTRATION

[No. 40, September Term, 1976.]

*Decided November 4, 1976.*

Appeal from the Circuit Court for Harford County
(HIGINBOTHOM, J.).

Petition for condemnation instituted by the State Roads
Commission of the State Highway Administration against
the personal representatives of the estate of Anna J. Mc-
Cleary, Sun Oil Company, lessee, Ernest Glenn, sub-lessee
and Harford County, Maryland. From an order declaring
Ernest Glenn had no compensable interest in the subject
property and dismissing him as a party to the proceedings,
he appeals.

The cause was argued before POWERS, MOORE and LISS, JJ.

*Herbert E. Witz,* with whom was *Bowen P. Weisheit* on
the brief, for appellant.

*Herbert L. Cohen, Special Attorney,* with whom were
*Francis B. Burch, Attorney General, Nolan H. Rogers,
Special Assistant Attorney General, Robert H. Archer* and
*Judith A. Armold, Special Attorneys* on the brief, for
appellee.

Powers, J., delivered the opinion of the Court.

The appeal in this case is docketed under the name of Joseph Ernest Glenn v. State Roads Commission of the State Highway Administration. The case began with a petition for condemnation, filed in the Circuit Court for Harford County, by the State Roads Commission of the State Highway Administration against two individuals as personal representatives of the estate of Anna I. McCleary, Sun Oil Company, Ernest Glenn, and Harford County, Maryland.

The petition, seeking condemnation of a parcel of land in the town of Bel Air in Harford County, containing 10,609 square feet or 0.233 of an acre, alleged that the property had been acquired by Mrs. McCleary in 1944, and that she had since departed this life. It further alleged that Sun Oil Company was a tenant of said property under a recorded lease, and that Glenn was a sublessee under an agreement with Sun Oil, the terms of which were unknown to the petitioner. The petition also recited that the property was subject to such liens, assessments, or charges as may be due the Town or the State of Maryland, and subject to the lien of real estate taxes levied by Harford County.

With the petition the State Roads Commission deposited with the Clerk of the Circuit Court a check in the amount of $67,300.00, alleging that sum to be the fair value of the land and improvements taken, and purporting to proceed pursuant to the quick-take provisions of the Constitution of Maryland and the implementing statutes, and the Maryland Rules. The petitioner prayed that the described property may be condemned so that it may acquire a fee simple title thereto, together with all other rights therein described.

The docket and the record show rather extensive proceedings between 14 March 1975, when the petition was filed, and 4 February 1976, when the court, Edward D. Higinbothom, J., entered the order from which this appeal was taken. The order itself was brief. It said:

"It is ORDERED this 4th day of February, 1976, by the Circuit Court for Harford County, that the Defendant, Joseph Ernest Glenn, has no interest in

the subject property which is compensable in an eminent domain proceeding, and accordingly said Defendant, Joseph Ernest Glenn, is hereby dismissed as a party to this proceeding.

"Cost to be paid by State Roads Commission."

Although the court held by its order of 4 February 1976 that Glenn had no compensable interest in the property or in the proceedings, several interlocutory rulings in the case are interpreted by Glenn as holding that he did have a compensable interest, and he is understandably disappointed in losing what he felt was in his grasp. We think that his expectations were never more than illusory, and that the final order did not deny him any rightful claim.

The estate of Mrs. McCleary owned fee simple title to the entire property, including the reversion after the termination of the rights of Sun Oil Company under its lease. With options, the Sun Oil Company lease was said to run until 1992. The sublease between Sun Oil Company and Glenn, which superseded an earlier arrangement of some years standing between them, provided for a term of one year, commencing on 28 November 1973, and from year to year thereafter, but that either party could terminate at the end of the initial term or any yearly extension by giving at least sixty days prior written notice to the other. It appears that the sublease automatically renewed itself for another year on 28 November 1975, while this condemnation proceeding was pending, and that Glenn was occupying the premises at the time of the order of 4 February 1976.[1]

The portion of the sublease which contains the provisions critical to Glenn's rights in this case is Paragraph 3. We set it out in full:

"3. CONDEMNATION; TITLE: If all or any part of said Premises shall be condemned or otherwise taken for public or quasi-public use, or shall an action therefor be instituted by an appropriate

---

1. This Court was informed at oral argument that Glenn was still occupying the premises. The State had become the owner of the property, but had not yet taken possession.

authority or agency, Company shall have the right, at anytime thereafter, to terminate this Lease upon giving Lessee written notice. Lessee hereby waives any right to claim any portion of the award or damages due Company made or arising out of the condemnation or taking of the Premises. Company makes no warranty of title to the Premises, expressed or implied, and Lessee hereby waives any right to recover damages from Company arising by reason of Company's loss or failure of title or loss of the right to possession of the Premises, including loss or disposition of the Premises by reasons of condemnation or taking. Notwithstanding any other provisions herein, if the right of Company to title or possession of the Premises shall cease or terminate for any reason whatsoever, this Lease shall automatically terminate five (5) days prior thereto."

All respondents answered the petition. Numerous interrogatories were propounded and answered. Glenn petitioned for a pre-trial conference, to consider the applicability of Maryland's recently enacted Gasoline Products Marketing Act having to do with payment by a distributor to a dealer for good will, and to consider the report of an expert to be proffered as evidence of the damage sustained by loss of good will. A pre-trial conference was held with Judge Albert P. Close on 15 October. Memoranda of Law were filed by the parties. On 25 November 1975 Judge Close filed an Opinion, constituting his rulings on the questions raised.

So that later developments in the case may be understood in a broad context, we shall refer to a few of the points dealt with by Judge Close in that Opinion. He quoted the paragraph of the sublease dealing with condemnation, which we have quoted. He noted that Sun Oil had the right to terminate the lease upon giving written notice, but that it had not chosen to exercise that right. Judge Close said that if the lease were already terminated, the issues raised by Glenn would be moot. The value of his sublease would be

measured at the time of trial, and would have no value. Since Glenn would be entitled to nothing, he would not be entitled to present any witnesses.

On the other hand, said Judge Close, if the sublease has value at the time of trial, Glenn would have a right to be compensated for its value. He also pointed out that this would be Glenn's value, and would not be a claim by him of a portion of any award of damages due Sun Oil. The Opinion noted that because of the Gasoline Products Marketing Act, one could not necessarily expect that Sun Oil would exercise its option to terminate the sublease by giving written notice.

The judge then proceeded to discuss the nature of the damages that Glenn would be entitled to claim at the trial if his sublease was still in effect at that time. He summarized:

> "In short, before the Gasoline Products Marketing Act was enacted, a condemnation proceeding took only the land under a business and therefore no compensation was awarded for the business or business goodwill. Nothing in the Gasoline Products Marketing Act changes this situation. Glenn may not offer evidence of the value of his goodwill since it is not being taken.
>
> "Although Glenn may take the other elements of his business goodwill with him when he moves, he cannot take the value of being located on the condemned property with him. Insofar as that location is an element of his business goodwill, he should be compensated for it."

Before Judge Close's Opinion was filed, Sun Oil filed a Motion for Summary Judgment, asserting that Glenn would have no compensable interest in the condemnation proceeding, and should be dismissed as a party defendant. Glenn responded to that motion by asserting that he still had a valid sublease, which Sun Oil had not attempted to terminate, and had a compensable interest in the condemnation proceedings. The docket records that on 8 December 1975 the Motion for Summary Judgment was argued before Judge Higinbothom, and was denied.

The State Roads Commission and Sun Oil filed a stipulation and petition, in which they agreed that the damage sustained by Sun Oil Company as a result of the taking was $23,500.00. They petitioned the court to return an inquisition in that amount. A week later Glenn filed a motion to dismiss Sun Oil as a defendant, reciting that Sun Oil had reached an agreement as to the amount of its damage, and had no further interest in the case. At the same time, Glenn filed a motion that the stipulation and petition of Sun Oil and the State Roads Commission not be received. Sun Oil responded to the Motion to Dismiss by admitting the allegations, and agreeing that it was not a proper party. Sun Oil opposed the motion ne recipiatur.

Promptly thereafter the State Roads Commission filed opposition to Glenn's motion ne recipiatur, and to Glenn's motion to dismiss Sun Oil as a party. It pointed out that Sun Oil must remain a party until an inquisition is returned. At the same time the State Roads Commission filed a motion to dismiss Glenn as a party. A show cause order was entered on that motion. On 31 December 1975 Glenn filed an answer and requested a hearing.

The State Roads Commission and Sun Oil filed further stipulations waiving a jury, and waiving a view of the property by the judge. Hearings were held before Judge Higinbothom on 5 January 1976 on the various pending matters. On 13 January 1976 the inquisition fixing the damages for the taking from Sun Oil was filed. Also filed was a Memorandum Opinion by Judge Higinbothom. He said that his signing of the inquisition effectively took Sun Oil out of the case. He denied the motion to dismiss Glenn as a party, saying that Glenn was still there under his sublease, and would still be entitled to claim at the trial, as ruled previously by Judge Close in his Opinion of 25 November 1975, that portion of the goodwill of his business which is attributable to the existence of the business at its particular location.

The posture of the case was radically changed by several events of 30 January 1976. Sun Oil Company filed a petition for leave to withdraw funds in the amount of the damages

awarded to it by the inquisition. Judge Close signed an order directing the Clerk to deliver to Sun Oil Company a check in the amount of $23,500.00, and upon doing so, to mark these proceedings "Settled and Off" as to Sun Oil Company, only. The docket entries record that the check was delivered, and the case was entered Settled and Off as to Sun Oil Company only.

On the same day the State Roads Commission filed a motion for determination of a question of law, as permitted by Maryland Rule 502. It asserted that whatever interest Glenn theretofore had in the property was through Sun Oil Company, whose interest had been legally terminated. It stated that Glenn had continued in occupancy of the premises, but no longer had the right of possession, and was, at most, a tenant at will or a tenant by sufferance. The docket shows that the Motion was heard by Judge Higinbothom on 3 February. An answer by Glenn in opposition to the motion was filed on that day. The docket shows the entry of judgment on that day in favor of the State Roads Commission against Joseph Ernest Glenn, and dismissal of the case with an order to be submitted. The written order was entered the next day.

Glenn presents these questions on appeal:

"1. Did Appellant, Joseph Ernest Glenn, have a compensable interest in the subject property on March 14, 1975, the date Petition for condemnation was filed?

"2. Did Appellant, Joseph Ernest Glenn, have a compensable interest in the subject property on February 3, 1976, the date set for trial herein?

A. Was the sub-lease to Appellant in effect on the 3rd day of February, 1976, the date assigned for trial of this case, and the date of valuation of Appellant's interest?

B. If the sub-lease to Appellant was not in effect on February 3, 1976, was its termination the result of the action of Appellee subsequent to the filing of this proceeding, or as a result of the filing thereof?"

Arguments in both briefs range widely over many legal principles involved in the field of eminent domain. Appellant's argument in support of the first question he presents is, in essence, that he had a compensable interest in the property when the condemnation petition was filed; that when there are multiple interests in property taken by eminent domain the jury makes a separate award to the holder of each interest; and that there are recognized exceptions to the general rule that the sum of the separate interests may not exceed the value of the whole.

It is true that in *Heritage Realty v. City of Baltimore*, 252 Md. 1, 248 A. 2d 898 (1969), the Court of Appeals recognized that, under certain circumstances, the total cost of the acquisition of separate interests in property by the City could, in the aggregate, be greater than the value of the property. The situation in that case was somewhat unusual because of a perpetual leasehold interest in the property and because the City separately acquired the reversion and the leasehold interest. It may be, also, that the peculiar incidence of the ground rent system in Maryland gave rise to the holding of the Court of Appeals in *Mayor & C. C. of Balto. v. Latrobe*, 101 Md. 621, 61 A. 203 (1905), which involved the question of the amount of ground rent attributable to the residue of a lot after a portion of the lot was taken by eminent domain.

The cases referred to by the appellant in this phase of his argument include *Mayor, etc. v. Rice*, 73 Md. 307, 21 A. 181 (1891), which recognized the interest of a year-to-year tenant as a compensable interest in property being taken by eminent domain, and which also said that under the circumstances in that case the jury had a right to consider the probability of renewal of the term as affecting its market value. In *Sholom, Inc. v. S.R.C.*, 246 Md. 688, 229 A. 2d 576 (1967), the Court of Appeals held that a tenant was entitled to have the jury consider the value to it of options to extend its lease for two additional five-year terms after the current terms, even though the time had not yet arrived for it to exercise those options.

It may be that the main fallacy in appellant's argument is

that he refers to an interest he had on the date the petition for condemnation was filed. If we assume that he did, indeed, have a compensable interest in the property on that date, an interest which was recognized by several subsequent interlocutory rulings in the lower court, the critical time for determining whether the appellant had a compensable interest was the date of the taking of the property.

Although the State Roads Commission contends that it acted in this case in the exercise of the quick-take rights permitted by law, Judge Higinbothom held in his Memorandum Opinion of 13 January 1976 that the State had not taken under the quick-take procedures. Whether those procedures were or were not complied with, it seems to be irrelevant because if they were, the taking had not yet occurred on 3 February 1976.

The Court of Appeals said in *LaFontaine's Heirs*, 205 Md. 311, 107 A. 2d 653 (1954), at 320:

> "We think that where the State Roads Commission is entitled to act under Section 40B of Article 3 of the Constitution and Section 9 of Article 89B of the Code, and complies with all their requirements, the taking occurs when there is an actual appropriation of the land to highway purposes."

Since an earlier date of taking did not come about in this case because of the quick-take procedure, we turn to Code, Real Property Art., Title 12, Eminent Domain, § 12-102, which says:

> "In this title, property is deemed to be taken:
>
> (1) If the plaintiff lawfully is authorized to take the property before trial pursuant to Article III of the Constitution of the state, or any amendment to it, and the required payment has been made to the defendant or into court, any required security has been given, and the plaintiff has taken possession of the property and actually and lawfully ap-

propriated it to the public purposes of the plaintiff.

(2) In every other case, if the plaintiff pays the judgment and costs pursuant to Subtitle U of the Maryland Rules."

and to § 12-103, which says:

"Unless an applicable statute specifies a different time as of which the value is to be determined, the value of the property sought to be condemned and of any adjacent property of the defendant claimed to be affected by the taking shall be determined as of the date of the taking, if taking has occurred, or as of the date of trial, if taking has not occurred."

Maryland Rule U22 a. provides:

"Upon the entry of final judgment in favor of the plaintiff for the property condemned and certification by the plaintiff that the award has been paid or payment of the award into court, the clerk shall record the inquisition among the land records of the county in the same manner in which deeds are recorded."

With the payment of the amount of the inquisition on 30 January 1976, and the docket entry that the case was Settled and Off as to Sun Oil Company, the taking of the entire interest of Sun Oil Company was complete.[2] From that moment, the right of Sun Oil to title or possession of the premises ceased and terminated. The taking which was said in *LaFontaine's Heirs, supra,* to occur in a quick-take case when there is an actual appropriation of the land to highway purposes, is a taking prior to passage of title. When legal title actually passes by deed, or its equivalent — inquisition and payment of the damages — the time of physical appropriation to highway purposes is irrelevant.

---

2. By a similar procedure of stipulation, inquisition, and payment the State Roads Commission acquired the fee simple interest of the McCleary estate.

When Sun Oil Company's right to title or possession ceased and terminated, Glenn's sublease automatically terminated five days prior thereto,[3] under the provisions of the very agreement under which Glenn occupied the premises.

The answers to appellant's questions are that he did have a compensable interest in the property when the condemnation petition was filed on 14 March 1975, but that on and after 30 January 1976 he had no compensable interest in the property.

Appellant argues two other points. We have considered them fully, and we conclude that neither of them is well taken.

He points out that the automatic termination of his sublease could be triggered only if Sun Oil's right to title or possession of the premises ceases or terminates. He contends that Sun Oil did not have title to the premises and was not in possession of the premises. Therefore, appellant argues, it was impossible for the automatic termination clause to become operative.

Glenn knew, or was charged with knowledge, that Sun Oil did not have fee simple title to the premises, but did have title to the leasehold interest. The word "title" as used in Paragraph 3 of the sublease to Glenn must be taken to refer to the leasehold title which both parties knew was the nature of the title held by Sun Oil. Likewise it would be illogical to say that the word "possession" as used in the same clause was rendered meaningless by the very nature of the instrument in which it was used. We apply here the rule expressed by the Court of Appeals in *Bernstein v. Merkel,* 126 Md. 454, 95 A. 55 (1915), when the Court said, at 460:

"The complete answer to this contention is that it is well settled in this State that the possession of the

---

**3.** It is of no significance in this case, and there is no issue here, whether Glenn's rights terminated with the termination of Sun Oil's rights, or five days earlier. We express no opinion on the retrospective aspect of the automatic termination clause.

tenant is the possession of the landlord. *Stewart v. May*, 111 Md. 162, *and the cases there cited."*

We hold that Sun Oil Company had a sufficient right to both title and possession that the termination of those rights automatically terminated Glenn's sublease.

Appellant also argues that no action taken by the State Roads Commission after filing the condemnation petition can increase or depress the value of his interest in the property condemned. He relies upon Code, Real Property Art., § 12-105 (b), which defines fair market value, and excludes any increment or diminution in value proximately caused by the public project.

In this case the question of whether the value of Glenn's interest was enhanced or depressed by the proposed public project became irrelevant when, before the time its value would have been determined, his interest was completely extinguished by operation of the instrument under which it was created.

The situation which Judge Close postulated in his opinion of 25 November 1975 became a fact on 30 January 1976. Glenn's sublease had been terminated. Any value it had would be measured at the time of trial. There had been no trial. The sublease had no value. There was no issue to be tried.

*Order affirmed.*
*Appellant to pay costs.*