## Simpson *versus* Neill.

1. All the property on the river front of the city of Philadelphia on the river Delaware, below low-water mark, is held merely by license from the Commonwealth, and subject to such laws as the legislature may see fit to enact.
2. The Act of April 8th 1851, which confers upon the Board of Port Wardens a jurisdiction over controversies in regard to wharfage between adjoining wharf-owners, is not in derogation of the right of trial by jury.
3. Where land from which two piers extend into the river is owned by adjoining owners, although the dock which separates the piers is sixty-four feet in width, these piers are adjoining wharves, within the Act of 1851.

February 18th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county*: Of January Term 1877, No. 153.

Debt by John L. Neill against Adam M. Simpson, on an award of the Board of Port Wardens of the port of Philadelphia.

In 1867 Neill and Simpson were tenants in common of certain land which extended from Swanson street to the line fixed by the Board of Port Wardens in the Delaware river. On this land was a wharf, from which extended two piers into the river at a distance of about sixty-four feet from each other. Neill and Simpson agreed to make partition of the land, and deeds were mutually executed by the parties for their respective portions, that of Neill being made to Simpson's sons. At the time of the conveyance, defendant's pier

[Simpson *v.* Neill.]

was used by Neill and Simpson as tenants in common, and had for years been almost entirely used for vessels lying in the dock and moored to its north side. In the deed from Neill to the two Simpsons, defendant's pier was conveyed to the latter with " all passages, waters, watercourses, wharves, docks, landings, landing-places and other appurtenances thereto belonging." After the deed the grantees continued to use the water north of the pier for vessels moored to the pier as fully and in the same manner as Neill and James Simpson had used it before the partition. In the year 1871, Neill set up a claim, as against the two Simpsons, for a portion of the wharfage of vessels lying in the dock against the north side of defendant's pier, and requested the port wardens to adjust the proportion, under the provisions of the Act of April 8th 1851, Pamph. L. 354, which provides as follows:

" That in all cases when the owner or owners of adjoining wharves, docks, landings or river front, or any part or portion thereof in the port of Philadelphia shall disagree as to the proper apportionment of the wharfage or dockage payable to them in accordance with their titles by persons making use of the same or by vessels lying in front thereof, it shall the the duty of the master warden and board of wardens of said port, upon the written application of one or more of such owners, and the said wardens are hereby authorized and required,'after notice to the parties interested and in accordance with the established custom. and usages of the port, or where there is no such usage, then as justice and equity may require, to determine the relative proportions of such wharfage and dockage belonging to the several proprietors of such adjoining wharves, docks, landings, or river front, or any parts thereof: Provided, that nothing herein contained shall be construed to authorize the said wardens to take cognisance of any questions involving the title to such property ; but such jurisdiction and the power to enforce the rights of the owners of said wharves, docks, landings or river front to wharfage and dockage from persons or vessels heretofore or hereafter using or lying opposite to the same shall exist and remain in the proper courts of law."

The division line after the partition was close to the north side of the defendant's pier and gave Neill nearly the whole of the dock or slip. It was in evidence that there was a slip on the south side, but it was narrow and stopped up by a marine railway and was seldom used for mooring vessels. The Board of Port Wardens decided that the Simpsons should pay Neill the one-third of all the wharfage from vessels moored at the north side of their pier, and fixed the amount of wharfage, as between certain dates, at $579.25. The foregoing facts having been shown at the trial, the court, Mitchell, J., directed a verdict for plaintiff for one-third the above amount, and judgment having been entered thereon the defendants took this writ alleging that this direction was error.

[Simpson *v.* Neill.]

*E. Spencer Miller*, for plaintiff in error.—The act applies to owners of "adjoining wharves." Piers extending into the river opposite to each other are in no sense adjoining wharves. The wharfage to be divided or apportioned between owners is wharfage for vessels lying "in front" of such wharves. Vessels lying at the side of a pier cannot be said to lie in front of a wharf.

The object of the act evidently is to prevent differences between owners in cases in which one has a bulkhead of say twenty feet, and another a bulkhead of the like front, and no vessel can lie at either without overlapping the other. In such cases neither would be of any use without the privilege of using the water in front of the other, and to utilize both, without discord, the act was passed. The reason for its application does not arise between owners of opposite piers.

If the right to moor a vessel to a pier is a common-law right, a statute depriving the owner of it or making him pay another for it would be clearly unconstitutional. But if it were not the ascertainment of the fact that he was not entitled to this common-law right without paying for it, and of how much he is to pay could not be settled without a jury. See North Penna. Coal Co. *v.* Snowden, 6 Wright 488; Rhines *v.* Clark, 1 P. F. Smith 96; Tillmes *v.* Marsh, 17 Id. 508; Haines's Appeal, 23 Id. 169; Williams *v.* Pittsburgh, 2 Norris 71; Pusey's Appeal, Id. 67.

If, then, the wardens have no right to compel the owner of a pier to pay the owner of an opposite pier for the use of the water in front of it, *a fortiori* have they not the right to do so when the opposite owner has by a solemn grant given to the other owner the use of the water proper for his pier.

The act expressly forbids the wardens from taking "cognisance of any questions involving the title to said property." How can they decide as to the force of the words in the defendant's deed without disregarding this proviso.

*Henry Flanders* and *David W. Sellers*, for defendant in error. —It had always been held that the riparian owner, against every one but the Commonwealth, had a property control in and over the dock in front of his land, but this has now been put at definite rest by sect. 4 of an act approved April 8th 1868, Pamph. L. 755, in these words, "the breadth of water front, appertaining to each owner of land on the river bank, shall be determined by protracting the lines of the land to the line established as the limit to which wharves may be built."

In every case in which a vessel moored to a wharf or a pier has a width of beam more than the breadth of water appertaining to the owner of the pier, the liability to pay a portion of the wharfage or dockage is the right of the riparian owner whose waters or dock is thus used. Usually this is apportioned by agreement.

[Simpson *v.* Neill.]

The wardens had jurisdiction and no appeal was taken from their award.    The proviso does not apply.    There was no question about the title, but simply one of apportionment in accordance with the titles as settled.

The judgment of the Supreme Court was entered, March 17th 1879,

PER CURIAM.—We think there is nothing in the points made on the conveyances so much relied on by the learned and zealous counsel for the plaintiff in error.    If the deed Neill to Simpson contained the general words " waters, docks, &c.," so did the deed Simpson to Neill of the same date, and the one was a fair set-off against the other.    But in truth neither party had any right to convey the waters and docks, being as they were part of the river Delaware. These words could have no more effect on the rights of the respective parties than would a conveyance of a lot on a public street " with all the streets and highways thereunto appertaining."    All the property on the river front of the city below low-water mark of the river Delaware is held merely by license from the Commonwealth, under and subject to such laws and restrictions as the legislature has seen fit to enact.    It cannot, we think, be doubted that these wharves were adjoining, within the letter and spirit of the Act of 1851, and would be so though the piers were one hundred feet apart, provided there was no intervening wharf or pier.    That the claim of the defendant below was derived from and altogether depended upon statutory enactment is a sufficient answer to the argument that the Act of Assembly vesting jurisdiction in the wardens is unconstitutional as depriving the defendant of his right to a trial by jury.

Judgment affirmed.