## Construction Along Delaware and Schuylkill Rivers

GORNISH, *Acting Attorney General*, ARENS-BERG, *Deputy Attorney General*, August 21, 1978—You have asked for a clarification of our official opinion no. 77-20 water obstruction permits, dated December 30, 1977, in the light of the authority of the Navigation Commission for the Delaware River and its navigable tributaries and the Director of Commerce for the City of Philadelphia to grant licenses for the construction of facilities in the Delaware and Schuylkill Rivers below the low-water mark.

Opinion no. 77-20 stated that an applicant for a water obstruction permit for facilities extending below the low-water mark of a navigable river or stream must first obtain an easement or other interest in the submerged land below the low-water mark. This legal interest is necessary because the Commonwealth is the owner of the bed of navigable rivers and streams below the low-water mark. Since existing law requires that specific authority must be obtained from the General Assembly for the grant of such an interest, the opinion pointed

out that the applicant must obtain such an interest from the General Assembly by a duly enacted statute.

The question you have raised is whether, with respect to the Delaware and Schuylkill Rivers, the General Assembly has not already provided specifically for the conveyance of an interest in the submerged land to anyone desirous of constructing facilities extending below the low-water mark in those rivers.

It is our opinion, and you are advised, that the statutes enacted by the Pennsylvania General Assembly for the creation of the Navigation Commission for the Delaware River and its navigable tributaries and the Director of Commerce of the City of Philadelphia empowered those bodies to grant an interest in the river bed (a license) for the construction of facilities below the low-water mark of the Delaware and Schuylkill Rivers.

The statutory language which requires clarification by this opinion is found in the Act of June 21, 1937, P.L. 1960, sec. 4, 55 P.S. §§6 and 7, and reads as follows:

"Whenever any person . . . shall desire to construct, extend, or alter any wharf or pier, . . . into or on the aforesaid river and its navigable tributaries, such person . . . shall make application to the president of the commissioners . . . and file in the office of the president of the commissioners plans and specifications showing fully the proposed erection, contruction, extension, alteration, or improvement, *and produce their deed or deeds, or other evidence of title, to the property to be so occupied, altered, or improved* . . . the commissioners shall . . . give their assent, and issue a license for the erection . . . " (Emphasis supplied.)

Similar language to this act was in the Act of June 8, 1907, P.L. 496, which created the Department of Wharves, Docks and Ferries, the predecessor of the Director of Commerce for the City of Philadelphia with respect to the grant of such licenses.

It is our opinion that the deed or title referred to in the italized language above is the deed or title to the riparian land down to the low-water mark. It does not refer to title in the bed of the river. This conclusion will become clear through a discussion of the statutory and case law on the subject in Pennsylvania.

The Navigation Commission for the Delaware River and its navigable tributaries was created in 1937 by the Act of June 21, 1937, supra. This act authorized the commission to issue a license for the erection, construction, extension, alteration or improvement of facilities extending below the low-water mark of the Delaware River and its navigable tributaries except in the City of Philadelphia. The 1937 act provided that the license contain a condition requiring the licensee to obtain a water obstruction permit from the Water and Power Resources Board (now the Department of Environmental Resources).*

---

*The predecessor of the Navigation Commission for the Delaware River and its navigable tributaries was the Board of Commissioners of Navigation for the River Delaware and its navigable tributaries created by the Act of June 8, 1907, P.L. 496.

The predecessor of the Director of Commerce for the City of Philadelphia with respect to the grant of a license for the construction of facilities below the low-water mark within the City of Philadelphia was the Department of Wharves, Docks and

Similar statutes which concern the granting of licenses in the submerged bed of the Delaware River and its navigable tributaries have existed since the 19th century (the Act of March 29, 1803, 4 Sm.L. 67; the Act of March 25, 1805, P.L. 160, 4 Sm.L. 232; the Act of February 7, 1818, P.L. 72, 7 Sm.L. 34; and the Act of April 8, 1868, P.L. 755). These statutes dealt with the powers of the Board of Wardens of the Port of Philadelphia.

Every statute subsequent to the Act of March 29, 1803 has contained language requiring production of evidence by the applicant of ownership of an interest in the ground on which the facilities were to be erected—i.e., language similar to the present statute: 55 P.S. §6.

However, the Act of March 29, 1803 contained additional language which provides a basis by which the later statutes can be construed. See 1 Pa.C.S.A. §1921(c)(5). The relevant language of that act provided as follows:

"That when and so often as any person shall be desirous to extend any wharf, or other building of the nature of a wharf, or cause any such wharf or building to be made in the tide-way of the river Delaware, *from any part of the City or liberties of*

---

Ferries for the City of Philadelphia created by the Act of June 8, 1907, P.L. 488.

The predecessor of both the Department of Wharves, Docks and Ferries for the City of Philadelphia and the Board of the Commissioners of Navigation for the River Delaware and its navigable tributaries was the Board of Wardens for the port of Philadelphia created by the Act of March 29, 1803, 4 Sm.L. 67.

Authority for each of these predecessors was similar to that of the Navigation Commission.

*Philadelphia,* such person shall make application to the board of wardens, at any of their monthly meetings aforesaid, stating in writing, the nature, extent and plan of such intended wharf or building, *and produce their deed or deeds for said lot or lots. . . ."* (Emphasis supplied.)

The clear meaning of that language is that the production of a deed "for said lot or lots" refers to the "part of the City or liberties of Philadelphia" from which the wharf or building was to extend. Also, "said lot or lots" is referring to dry land, *not* deeds to river bottom land which was of course never subdivided in the traditional manner of "lots." This language reflects legislative intent that licenses were to be granted only to riparian owners and that these owners were required only to prove title by the production of a deed to their own land. Though subsequent statutes changed the wording of the Act of 1803, a study of case law demonstrates a continuation of legislative intent.

It is evident from a review of the case law that historically no interest greater than a license has been intended to pass to riparian owners along the Delaware River and its navigable tributaries for construction of obstructions below the low-water mark. It is well-settled that the limit of title possessed by a riparian owner of lands on tidal waters is the low-water mark and that title to land below that mark is in the Commonwealth: United States v. Penna. Salt Mfg. Co., 16 F. 2d 476 (E.D.Pa. 1926). " . . . All the property on the river front of the city below low-water mark of the river Delaware is held merely by license from the Commonwealth, under and subject to such laws and restrictions as the legislature has seen fit to enact." Simpson v.

Neill, 89 Pa. 183 (1879) at 186. Nor is the right of a riparian owner to build out into the tideway of the river an incident attaching to ownership of land fronting on the navigable waterway. "To low water mark this is true, beyond that the Commonwealth is owner; that ownership is one of unqualified sovereignty. Whatever right the riparian owner may possess, it is just that which the Commonwealth gives him and no more." Philadelphia and Reading Railroad Co. v. Morris, 7 Phila. 286 (1869) at 292.

Though no case states in so many words that no more than a deed to riparian lands need be produced to satisfy the statutory requirement, several cases contained wording which lead to the same conclusion. Tinicum Fishing Co. v. Carter, 61 Pa. 21 (1869) at 30, described the statutory power granted to the Board of Wardens of the port of Philadelphia in the following manner: " . . . the Board is empowered to grant licenses to the owners of land fronting on the river to extend wharves and piers into the bed and channel . . . " Furthermore, in Penna. Salt Mfg. Co., supra, at 481, the court said: "It is true that it is the policy (confirmed by state statutes) . . ., for obvious reasons, not to license constructions on the river front of lands by other than abutting property owners; but this circumstance does not affect the legal rights of the licensee to constructions beyond his property lines."

It is the riparian right of the owner in conjunction with a license that legalizes the existence of an obstruction: Philadelphia v. Com., 284 Pa. 225, 130 Atl. 491 (1925). The construction belongs to the land owner though it is not landed property. The riparian land owner has the rights of an owner,

though not of a land owner since his property is bedded in the land of the Commonwealth: U.S. v. Penna. Salt Mfg. Co., supra.

In no instance has a court insisted, or so much as mentioned, the possibility of requiring a riparian land owner to have title to land below the low-water mark in order to obtain a license for construction. In fact, the opposite is true. The courts repeatedly state that title remains in the Commonwealth. The courts would not have repeatedly found limited incidents of ownership in wharves, etc., had the owner originally had to have produced a "deed" to the river bottom. Therefore, the "deed" required to be produced has always meant a "deed" to the riparian land. The intent of the various statutes has been to grant licenses to riparian land owners upon proof of title in those riparian lands.

The goal of the various statutes discussed has been to enhance the accessibility of the Delaware River by development in a controlled manner. The licensing procedure gives riparian landowners a sufficient interest in the submerged land to build wharves, piers, etc. Since the Delaware River is essentially a public highway: " . . . control below low-water mark is in the state, both because of its police power control over navigable water highways and also its ownership of the land under the water; . . . whatever easement rights . . . exist or may be acquired in and over navigable waters and the lands under them are subject to the control of the police power of the state . . . " U.S. v. Penna. Salt Mfg. Co., 16 F. 2d 476 (1926) at 481.

There is no precedent for believing the legislative intent of the subject provision, 55 P.S. §6, to require more than title to riparian lands in order to obtain a license from the Navigation Commission.

We have examined records of the Board of Wardens for the port of Philadelphia located in the State Archives including minutes of meetings at which applications for licenses were received and discussed and licenses granted. We have also examined an index of State laws up through 1892 for evidence of statutes authorizing the conveyance of portions of navigable river beds, finding none. In point of fact, the Delaware River has been developed to its present state through the use of licenses, not submerged land conveyances. This development has taken place under statutes with language essentially identical to that being clarified by this opinion. Proof of title to land below the low-water mark has not been required in the past. There is no sound reason for requiring it at the present time.

It is therefore our opinion that the requirement in the various statutes, including those currently directed to the Director of Commerce for the City of Philadelphia and the Navigation Commission for the Delaware River and its navigable tributaries, for the production of evidence of ownership of the ground involved refers to the riparian land and not the river bed below the low-water mark. It is our view that the General Assembly did not intend in these various statutes that title or any interest beyond a simple revocable license be granted to the applicant by the Director of Commerce or Navigation Commission to whom was delegated that authority by the General Assembly.

Accordingly, it is our view that anyone desiring to construct, alter or extend facilities in the Delaware or Schuylkill Rivers need not seek from the General Assembly a statute authorizing the grant of an interest in the submerged land on which the construction is to be done inasmuch as the General

Assembly has already authorized, by statutes, the Director of Commerce of the City of Philadelphia, for those portions of the rivers within the City of Philadelphia, and the Navigation Commission for the Delaware River and its navigable tributaries, for portions outside of Philadelphia, to grant the required interest in the river bed.